EDWARD BETTLE, JR., ET AL., APPELLANTS, V. JOHN F.
TIEDGEN ET AL., APPELLEES.*

FILED DECEMBER 21, 1906. No. 14,189.

1. Mortgages: EQUITY OF REDEMPTION, PURCHASER OF. A mere purchaser of the equity of redemption of mortgaged lands is given all the protection that the statute was designed to afford him, if he is permitted to deal with safety with one who appears by the record to be the owner of a mortgage securing a nonnegotiable debt.

2. ————: ASSIGNMENT: PAYMENT. In the circumstances disclosed by this record, the mortgagee was authorized to receive payment and discharge the lien, although the mortgage had been assigned and the assignment made of record before the payment was made.

APPEAL from the district court for Madison county: JOHN F. BOYD, JUDGE. Affirmed.

Francis A. Brogan and M. J. Moyer, for appellants.

W. V. Allen and O. A. Abbott, contra.

AMES, C.

Tiedgen owned a tract of land upon which he executed a mortgage to secure a promissory note payable to the Omaha Loan & Trust Company. After the note had become due and had lost its negotiable character under the law merchant, the payee assigned it to the Boston Safe Deposit & Trust Company, soon after executing also to the latter company a formal assignment of the mortgage. Subsequently the Boston company sold and transferred the note and mortgage to the plaintiffs, who are still the lawful holders of them, but without formal assignment, except as already mentioned. The defendant Reimers became the owner of a second mortgage on the land and foreclosed it upon the equity of redemption, of which he

*Rehearing allowed. See opinion, p. 799, post.

became the purchaser at judicial sale after the date of the transfer and assignment first above mentioned, but before the assignment was made of record in the county, and without knowledge or notice of it. Nor did he ever know of it actually or constructively, or of either of the sales and transfers of the securities, until after he had in good faith paid the amount of the mortgage debt to the payee named in the instrument, the Omaha company, unless he was charged with notice by the record of the assignment several months after he had acquired title to the equity of redemption, in manner aforesaid, and his sheriff's deed had been made of record, and he had gone into possession of the land. The Boston company, at all times after it had disposed of the paper, was the agent of its assignee, the plaintiffs, for its collection, and payment to it would have discharged the debt, but the Omaha company became insolvent, and never remitted the money paid to it by Reimers for the satisfaction of the lien.

The facts thus briefly stated and their legal effect, as thus indicated, are, as we understand, not in dispute. They gave rise to the first of two questions presented by this record of the dismissal by the district court of an action to foreclose the mortgage. The case reached this court by appeal. This question, which was debated at length by counsel both in their briefs and orally at the bar, is whether Reimers is a subsequent purchaser within the meaning of section 16, ch. 73, Comp. St. 1903, and, as such, charged with constructive notice of the transfer of the paper by the record of the assignment before he made his payment. There is good reason for regarding him as such. This court held in *Ames v. Miller,* 65 Neb. 204, that an assignment of a mortgage is, without doubt, a "deed" within the meaning of section 46 of the statute, because it affects the title to, and transfers an interest in, real estate, and is entitled to be made of record by the provisions of the act. This being so, one who purchases a release or surrender of the interest and becomes also entitled to an instrument of record evidencing that fact

must, under the circumstances of the case at bar, be regarded as a subsequent purchaser of it and bound by record notice that his vendor had already parted with his title thereto.  It will be observed that section 39, ch. 73, *supra,* exempts from the constructive notice of the record of the mortgage three classes of persons only, namely, mortgagors and their heirs and personal representatives; but a purchaser of the equity of redemption who does not become obligated for the payment of the mortgage debt is a mere volunteer, who may or may not afterwards purchase, also, the outstanding lien or interest, and whose intention in that regard the mortgagee or his assigns can have no certain means of ascertaining.  In fact, it was admitted in argument that for a considerable time after Reimers acquired the equity of redemption he had no fixed or formed intention with respect to the payment of the mortgage lien in suit, and for that reason expressly declined to enter into an agreement for the extension of the debt.  Under such circumstances he can hardly be regarded as a "personal representative" of the mortgagor, who is still living and a party to the suit.  We think that, in view of the decisions of this court, a mere purchaser of the equity of redemption of mortgaged lands is given all the protection that the statute was designed to afford him, if he is permitted to deal with safety with one who appears by the record to be the owner of a mortgage securing a nonnegotiable debt.  *Eggert v. Beyer,* 43 Neb. 711.

The remaining question is one of fact, concerning which, however, the evidence is not conflicting, viz.:  Was the Omaha company an agent of the Boston company for the collection of the debt in controversy, it being admitted by counsel, as we understand them, that such an agent would have possessed authority to bind the plaintiffs also?  This question should, we think, be answered in the affirmative. The transaction and manner of dealing between the Omaha company and the Boston concern, briefly stated, was this:  The former executed its obligations, called "debentures," to the latter for a loan of money, and de-

posited with the latter a very large number of notes, secured by mortgages to itself, as collateral security for the loan. The collateral notes appear not to have been indorsed and delivered under the law merchant, and that fact in this instance is significant, but were transferred by an assignment embodying a guaranty of collection of the principal, and of subsequently accruing interest thereon, and evidently not intended, or having the legal effect, to give the paper currency in the market. The arrangement extended over a considerable term of years. The course of business between the parties which seems to have been contemplated, though not set forth in detail, by their written contract was that, whenever any of the pledged obligations became due, or were about to become so, they were returned to the Omaha company, which was afforded an opportunity for 60 days to secure their payment or renewal, and to substitute with the Boston company new and underdue obligations in their stead. The business of making loans, collections and renewals was carried on by the Omaha concern and in its name exclusively, formal assignments not being made of record, and the connection of the Boston company with the paper, or its name even, not being made known to the borrowers and mortgagors or other persons with whom the Omaha company dealt. A very large volume of business was carried on for a long time in this way, and this was the way in which the mortgage in suit was dealt with, except that after the Omaha company became insolvent, or it was about to become so, the assignment mentioned above was executed and filed for record. The undertaking by and between the two corporations was a joint enterprise for mutual gain very closely resembling a partnership. The Boston company furnished the money capital for a definite share of the profits under the name of interest, and for the residue thereof the Omaha company conducted the business, and, as between the parties, incurred, to the extent of its financial responsibility, the sole risk of loss. The principles applicable to such an association are elementary and

familiar. Each member is obligated by the conduct of every other in the transaction of the affairs of the concern.

We are therefore of the opinion that the judgment of dismissal was not erroneous, and recommend that it be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of dismissal be

AFFIRMED.

SEDGWICK, C. J. I concur in the conclusion reached.

The following opinion on rehearing was filed June 4, 1908. *Judgment of affirmance vacated and judgment of district court reversed:*

1. **Mortgages:** EQUITY OF REDEMPTION, PURCHASER OF. "A mere purchaser of the equity of redemption of mortgaged lands is given all the protection that the statute was designed to afford him, if he is permitted to deal with safety with one who appears by the record to be the owner of a mortgage securing a nonnegotiable debt." *Bettle v. Tiedgen, ante,* p. 795, adhered to.

2. ————: ASSIGNMENT: PAYMENT. And where such purchaser pays the principal sum of a note and mortgage to the original mortgagee, after an assignment of such mortgage to a third party has been duly recorded in the office of the register of deeds of the county in which the lands described in such mortgage are situated, and the original mortgagee fails to pay over such money to the record assignee of the mortgage, such payment to said original mortgagee will not, in the absence of proof of agency, estoppel, or the like, operate as a discharge of the debt secured by such mortgage.

3. ————: FORECLOSURE: PLEADING: SUFFICIENCY. An answer which alleges that on a certain day the defendant in a suit for the foreclosure of a mortgage, having no knowledge or notice of an alleged transfer of the note and mortgage, in order to relieve his premises of the apparent incumbrance thereby created, paid the original mortgagee the amount of said mortgage, and that the original mortgagee accepted said sum in full payment and satis-

faction of the note and mortgage sued on, and that at said time said original mortgagee had lawful authority to receive the same, does not constitute a plea of either agency or estoppel, and is not sufficient to entitle such defendant to prove that said original mortgagee, in accepting said payment, was acting as the agent of an assignee of said original mortgagee who had, prior thereto, placed his assignment of said mortgage on record.

FAWCETT, C.

This is a rehearing of an appeal from a decree of the district court for Madison county denying a foreclosure of the mortgage in controversy and dismissing plaintiff's suit. On the former hearing we affirmed the judgment of the lower court.

The facts, briefly stated, are as follows: In August, 1891, defendant Tiedgen borrowed from the Omaha Loan & Trust Company, of Omaha, $3,200, and as security therefor executed to said company the mortgage in controversy. The note which the mortgage was given to secure was payable five years after date. The Omaha Loan & Trust Company, which we will hereinafter designate as the Omaha company, sold the note and mortgage to some eastern investor, who carried the loan until its maturity, when, the note not being paid, the Omaha company, in compliance with its guaranty, repurchased the note and mortgage. No recorded assignment of either the sale or repurchase was made. Prior to the maturity of the note above referred to the defendant Reimers had commenced proceedings to foreclose a second mortgage upon the same property. Expecting that he would be compelled to purchase the property under his proceedings to foreclose his second mortgage, Mr. Reimers paid the last of the maturing interest coupons of the note secured by the first mortgage. After the maturity of the first mortgage note, and after it had repurchased the same, the Omaha company sent one of its employees, named Hayden, to see Mr. Reimers about their mortgage. Mr. Hayden requested Mr. Reimers to sign the necessary papers for an extension of the loan for another period of five years, but Mr. Reimers

was unwilling to sign any such papers, for the reason that he had not yet become the owner of the property, under his foreclosure proceedings, and might never become such owner. Hayden then stated to Reimers that he, Hayden, would execute the extension papers himself. To this Mr. Reimers made no objection, and upon his return to the office of the Omaha company Mr. Hayden did in fact execute the so-called extension agreement, extending the original Tiedgen note for a second period of five years from August, 1896. A number of years prior to the above dates, viz., on October 31, 1889, the Omaha company had entered into an agreement with the Boston Safe Deposit & Trust Company, of Boston, which we will hereinafter designate as the Boston company, in and by which agreement the Boston company agreed to act as trustee for the Omaha company to hold securities to be deposited with it by the Omaha company to secure the payment of debenture bonds or notes which might from time to time thereafter be issued by the Omaha company. By the terms of this trust agreement, before the Omaha company could issue debentures it was required to deposit with the Boston company real estate mortgages of a face value equal to the face value of the debentures to be issued by the Omaha company. On September 12, 1896, the Omaha company indorsed the original Tiedgen note as follows: "For value received, the Omaha Loan & Trust Company hereby assigns this note to ——————————————— or order, and guarantees, first, the collection of the within note, and, second, the prompt payment of the coupons attached thereto," and delivered the note so assigned, together with the mortgage and extension agreement, to the Boston company. On July 17, 1897, Mr. Reimers became the owner of the real estate in controversy, by sheriff's deed issued to him in his foreclosure suit, subject to the outstanding mortgage of $3,200; and from that time on until the maturity of the note according to the terms of the so-called extension agreement Mr. Reimers made the semi-

annual payments of interest on the note to the Omaha company, and received from that company the interest coupons. From September 12, 1896, to February 1, 1898, the Boston company seems to have been holding the note and mortgage in controversy without any formal assignment of the mortgage. For some reason, not disclosed in the record, the Omaha company, on the last mentioned date, executed a formal assignment of the mortgage to the Boston company, which assignment was on February 12, 1898, filed for record in the office of the register of deeds in Madison county. Some time during July, 1901, Mr. Reimers, who was still the owner of the real estate, received a notice from the Omaha company that the principal sum of the note and the last maturing semi-annual interest coupon of $96 would be due August 1. Mr. Reimers, having been called to the state of Pennsylvania on business during the latter part of July, instructed his banker at Grand Island to remit to the Omaha company, for his account, the sum of $3,296 to pay off the note and mortgage, which instruction his banker promptly obeyed, and sent the Omaha company a draft for that amount, which was received by the company on August 1, 1901. On his return home Mr. Reimers, under date of August 23, 1901, wrote the Omaha company as follows: "The canceled coupon No. 10 from my mortgage loan No. 6,986 is received, but I have not received release of mortgage and my note for $3,200 which I have paid in full by remittance of F. N. Bank of Grand Island. Please attend to this at once, as I have sold the farm, and will need the release soon. Yours truly, John Reimers."

On August 31 Mr. Reimers again wrote the Omaha company as follows: "I wrote you a week ago about release of my mortgage No. 6,986, which was paid August 1, 1901. I have not heard from you since, and you will please attend to it, or notify me what is the matter." To this letter Mr. Reimers received the following answer: "Omaha, Sept. 3, 1901. Dear Sir: Please pardon delay in sending forward papers in your loan. The causes have

been on account of the absence of two of our clerks on
vacation, one of whom has charge of all loans held behind
debentures with our trustees. It is necessary to substitute
another loan for yours. This will be done within a week
or ten days."

When the Omaha company received the money from Mr.
Reimers' banker, it did not remit the same to the Boston
company, but deposited it to the general credit of the
Omaha company on its open account in the Omaha Na-
tional Bank of Omaha. On December 11, 1901, the Omaha
company became insolvent, and passed into the hands of a
receiver, w' ) at once took possession of all of the assets
of the company. The Boston company then, under the
terms of its trust agreement, sold all of the notes and
mortgages of the Omaha company which it then held as
security for the debenture holders, the plaintiffs being the
purchasers of the note and mortgage in controversy at
such sale. Defendant Reimers refusing to pay plaintiffs
the amount of the mortgage, claiming that he had already
paid it once to the Omaha company, and that the Omaha
company was entitled to receive the payment, this suit was
commenced.

The order granting this rehearing reads: "Rehearing
allowed on the question as to whether payment to the
original mortgagee discharged the debt." By this ruling
on the motion for rehearing, the further consideration of
the case is limited to that one proposition. On the origi-
nal hearing defendant placed great reliance upon our
statute, which reads: "The recording of an assignment of
a mortgage shall not, in itself, be deemed notice of such
an assignment to the mortgagor, his heirs, or personal
representatives, so as to invalidate any payment made
by them, or either of them, to the mortgagee." Comp. St.
1905, ch. 73, sec. 39. Defendant argued that there was no
evidence in the record of any actual notice of the assign-
ment of the mortgage to Mr. Reimers, and that, under this
section of the statute, constructive notice by the record
of the assignment did not bind him. Our former opinion

decides this point adversely to the defendant.    Plaintiffs insist that that holding, not having been vacated by the order granting a rehearing, has now become the law of the case; while defendant insists that "there can be no law of the case invoked on rehearing."    Be that as it may, our decision of this point in our former opinion is not only in harmony with our holding in *Eggert v. Beyer,* 43 Neb. 711, but, also with well considered cases from other courts (*Robbins v. Larson,* 69 Minn. 436; *Schultz v. Sroelowitz,* 191 Ill. 249; *Woodward v. Brown,* 119 Cal. 283; *Brewster v. Carnes,* 103 N. Y. 556; *Larned v. Donovan,* 155 N. Y. 341), and must be adhered to.

On the question now under consideration the defendant contends that the payment by Mr. Reimers to the Omaha company discharged the debt, for the reason that, by the course of the dealings between the parties, the questions as to whether or not the Omaha company was the agent of the Boston company for the collection of the debt, or whether the Boston company had knowingly permitted the Omaha company to hold itself out to the defendant as its agent for the collection of the debt, are questions of fact for the determination of the court, and that, in the light of the record before us, we cannot disturb the finding of the district court in favor of the defendant on that question.    The questions of agency or estoppel are not raised by defendant's answer, and are, therefore, not available to defendant under the pleadings as they now stand.    For a proper understanding of the situation of the parties in this respect we again refer to the trust agreement between the Omaha company and the Boston company.    By the terms of that agreement, so long as the Omaha company promptly, and without any default, paid all maturing debentures of any series, and all instalments of interest upon any of such debentures, it was to have the right to collect, retain and use the interest upon all the mortgages which it had deposited with the Boston company, in the same manner and with the same effect as if such agreement had never been entered into.    It will be seen, there-

fore, that the fact that the Omaha company continued from time to time to collect the interest coupons from Mr. Reimers was not by sufferance of the Boston company, but by its own right; hence, no agency can be implied from that fact. The evidence shows that the Boston company at all times dealt with the Omaha company within the terms of the trust agreement. By the terms of that agreement the Omaha company had the right at any time within 60 days after the maturity of any note and mortgage which it had deposited with the Boston company to withdraw said note and mortgage, after having first substituted other notes and mortgages for an equal amount. The evidence shows that the Boston company never deviated from that condition of the agreement, but that, in every instance during the 12 years it continued to act as such trustee, before the Omaha company was permitted to withdraw a note and mortgage, it was required either to substitute with the Boston company other securities for an equal amount, or to make a cash deposit equal in amount to the amount of the securities withdrawn, and that the Boston company, in every such instance, held such cash deposit until the Omaha company made a proper substitution of securities as provided by the trust agreement. In the light of these facts, we are unable to see how the defense of agency could be claimed to have been established, even if it had been tendered by the answer.

Furthermore, we think the evidence shows that Mr. Reimers had received actual notice on numerous occasions that the Omaha Loan & Trust Company had parted with the principal note, and was no longer the owner and holder of the same. Every six months there was mailed to Mr. Reimers a notice that the interest on the loan would be due on a certain date, which notice contained this clause: "Please send to the address given above the herein stated amount of interest, by draft on New York, Chicago, or Omaha, post office order or by registered letter. Personal checks not accepted. The remittance should be made at this office as much as ten days before the interest is

due, that it may reach the lender in the east on the day on which it is payable there. Prompt payment of interest is expected and required. Respectfully, W. T. Wyman, Treasurer. Return this notice with the funds. Coupons will be obtained and returned to you after payment. Notify this company of change of post office or of sale of land." Mr. Reimers testified that he never received these notices, but he admits that from the time of the execution of the so-called extension agreement, in 1896, down to the maturity of the note, in 1901, a period of five years, he paid the interest to the Omaha company every six months.

We come now to the main point which compels us, reluctantly we confess, to hold that, under the evidence now before us, the payment by Mr. Reimers to the Omaha company did not discharge the debt. The formal assignment of the mortgage on February 1, 1898, by the Omaha company to the Boston company was duly spread upon the records in the office of the register of deeds in Madison county on February 12, 1898. In the face of the notice thus given by the record of this assignment, Mr. Reimers could not, under the pleadings in this case, three and one-half years later, pay the principal sum of the note and mortgage in controversy to any but the Boston company. If he paid it to anyone else he did so at his peril. Having paid the money to the Omaha company we are compelled to hold that he thereby made the Omaha company his agent for the transmission of the money to the Boston company. The Omaha company having failed to do its duty in that regard, the loss must fall upon the one who was negligent in the matter. If, in the end, the defendant Reimers shall be compelled to pay this mortgage a second time, it will indeed be a great hardship. On the other hand, if the plaintiffs, who represent the holders of the debentures which were secured by this mortgage, and who took their debentures in good faith, relying upon the security deposited for their benefit, are defeated in this suit, then they will suffer a great hardship. It is a

deplorable situation from either point of view, but there is no way by which we can relieve the case of the injustice which must be suffered by one side or the other. Whichever way it is ultimately decided, the loser will be a victim of misplaced confidence.

After a full discussion, we are all agreed that we ought not to enter a final judgment on this hearing, but that the cause should be reversed and remanded to the district court for further proceedings according to law.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is vacated, the judgment of the district court reversed and the cause remanded for further proceedings according to law.

REVERSED.