AGNES S. CAMPBELL, APPELLEE, V. MATTHEW O'CONNOR ET AL., APPELLANTS.

FILED JUNE 23, 1898. No. 8197.

1. **Payment to Agent:** PROOF OF AGENT'S AUTHORITY. One claiming the benefit of a payment of a negotiable instrument, to a person other than the owner, who does not produce the instrument or have it in his possession, must show that such person had authority or apparent authority, under the law of agency, to receive payment.

2. ———: ———. The collection by a third person of installments of interest on a negotiable instrument confers no authority or apparent authority on such person to receive payment of the principal when it matures.

3. **Mortgages:** PAYMENT TO ONE NOT AUTHORIZED TO RECEIVE IT: RIGHTS OF INNOCENT PURCHASER: CONSTRUCTIVE SERVICE. A borrowed of B money wherewith to pay a mortgage on his land, and secured the same by a mortgage to B. B did not pay the money to A, but undertook to discharge the first mortgage therewith. He paid to a person not authorized to receive payment and who did not account to the holder of the first mortgage. Suit was begun to foreclose the first mortgage. After such suit was begun, but before A had answered and before the record disclosed the connection between the two mortgages, B sold his note and mortgage to a stranger without notice, and before the note secured by the mortgage had matured. *Held*, That there had been no payment of the first mortgage, and that the failure of consideration for the second was not an available defense as against the innocent purchaser. *Held, further*, That only constructive service having been had on B in the foreclosure case, and B not having appeared therein, no relief could be given in that case to the mortgagor against B.

APPEAL from the district court of Dodge county. Heard below before MARSHALL, J. *Affirmed*.

*C. Hollenbeck*, for appellants.

*Loomis & Abbott* and *W. J. Courtright, contra*.

IRVINE, C.

Agnes S. Campbell brought this suit to foreclose a mortgage alleged to have been given by Matthew O'Con-

nor and wife to secure a note for $450. The mortgage and note were made to C. H. Toncray, and were by him sold to the plaintiff, he indorsing the note and the coupons evidencing the interest thereon, but no assignment of the mortgage having been either recorded or executed. Charles H. Smith intervened, alleging the making and delivery of another note of like amount, likewise secured by mortgage on the same land, by the O'Connors to the Ætna Life Insurance Company, and its transfer before maturity to Smith for a valuable consideration. The O'Connors pleaded payment of the Campbell mortgage and, somewhat in a double aspect, pleaded that if it had not been paid no consideration existed for the Smith mortgage. There was a decree foreclosing both mortgages and the mortgagors appeal.

The facts, so far as disclosed, are not open to much doubt. O'Connor, in 1885, borrowed $450 from Toncray, executing his note with interest coupons attached, and his mortgage securing the same. Soon after Toncray, through a broker, sold the note and mortgage to the plaintiff. O'Connor, as interest matured, paid it to Toncray either directly or through a bank, and at once or in a short time thereafter received from him the coupons. Toncray had no authority to collect even the interest, and the plaintiff had no knowledge of his doing so, the broker referred to making her the payments and receiving from her the coupons, sometimes, apparently, before payment had been made to Toncray. As the note approached maturity, in 1890, O'Connor arranged with the Ætna Life Insurance Company to obtain a loan wherewith to pay the Toncray mortgage. The money was sent in the form of a check or draft to one McVicker, who was either the agent of the Ætna company or a broker acting in this instance for it, and McVicker paid the money to Toncray. There was at this time the final interest coupon overdue and in the hands of Toncray, having apparently been paid by the eastern broker. The whole amount was paid by McVicker, Toncray surrendering the coupon and

promising to obtain the principal note in a few days. Toncray afterwards entered satisfaction of the first mortgage on the margin of the record. McVicker treated the matter as completed and the Ætna mortgage was recorded. Toncray did not remit the principal to the owner of the note.

As between the plaintiff and the O'Connors the case is simple. The note was negotiable and it was paid to the payee, who had sold it, who did not produce it or have it in his possession. Under such circumstances the party claiming the benefit of the payment must show that the person to whom payment was made was authorized to receive payment. (*South Branch Lumber Co. v. Littlejohn*, 31 Neb. 606; *First Nat. Bank of Omaha v. Chilson*, 45 Neb. 257; *Bull v. Mitchell*, 47 Neb. 647; *Richards v. Waller*, 49 Neb. 639.) Conceding that the circumstances vested in Toncray apparent authority to receive payment of the interest, this conferred neither actual nor apparent authority to collect the principal. (*Bull v. Mitchell, supra; Richards v. Waller, supra.*) There were in the evidence certain features which tended to satisfy this burden, but there was direct testimony and there were significant circumstances opposed thereto, and the finding is in this respect fully warranted by the proofs.

As to the second mortgage the inference is irresistible that the Ætna company, knowing of the first mortgage and that it was lending money to discharge it, did not pay the money to O'Connor, but undertook, through a man it made its own agent for the purpose, to see to the application of the money. This man paid to Toncray, and the blunder was his and not O'Connor's. O'Connor therefore never obtained the benefit of the second mortgage, and, had it remained in the hands of the Ætna company, he would, under the evidence before us, have a perfect defense thereto. Before it became due according to its terms it was sold to Smith, and the evidence is uncontradicted that he had no connection with the Ætna company, paid full value, and had no notice of the defect.

It is true that he did not buy until after this suit was commenced, and it is argued that he took subject to the condition of affairs then existing and obtained no greater rights than his assignor. He bought, however, before the O'Connors filed their answer, and there was nothing prior to that disclosed by the record which was calculated to put him on inquiry or charge him with notice. True he would be informed by the pendency of the suit that the purported release of the first mortgage by Toncray was resisted by plaintiff claiming as Toncray's assignee, but there was nothing in that fact to indicate that the second mortgage had been made to obtain money to discharge the first, that the money had not in fact been advanced to O'Connor, or that O'Connor had any defense to the second mortgage. The district court properly protected the second mortgagee's assignee. It is apparent that O'Connor has suffered a wrong, but this was committed by the second mortgagee or its agent, and the note having passed into the hands of an innocent holder for value before maturity, relief must be sought personally against the second mortgagee. There is a conditional prayer in the answer of O'Connor for such relief, but the record shows that constructive service only was had on the Ætna company and that it did not appear in the action. No personal judgment can therefore be rendered against it.

AFFIRMED.