FARMERS COOPERATIVE MERCANTILE COMPANY, APPELLANT AND CROSS-APPELLEE, V. ARTHUR H. SHULTZ, ET AL., APPELLEES AND CROSS-APPELLANTS.

FILED SEPTEMBER 29, 1925.  No. 23052.

1. Corporations: PURCHASE OF STOCK. A by-law of a corporation which provides: "The board of directors shall have full power to buy and sell shares at par value. A shareholder wishing to withdraw his stock for any reason shall present the same to the directors and they shall have full power to dispose of and consent to transfer of same"—does not authorize the manager of such corporation, without the approval of its board of directors, to purchase and retire any of its capital stock; nor does the fact that the corporation, through its board of directors, has usually approved such purchase and retirement of capital stock, when requested by shareholders, authorize the manager, without the approval of the board of directors, to purchase for the corporation any of its outstanding capital stock.

2. Payment: BURDEN OF PROOF. The plea of payment is an affirmative defense, and the burden of proving it rests on him who pleads it as a defense.

3. Corporations: MONEY DUE FROM MANAGER: PAYMENT: BURDEN OF PROOF. Where the manager of a corporation undertakes to pay his obligation to the corporation out of the undivided profits account of the corporation, claiming that he had placed funds of his own in that account, the burden is upon him to establish that he had intermingled his own funds with the funds of the corporation, and to point out in detail the amounts and items, which he claims were his own, that went into the corporation's treasury. Under such circumstances, where the defendant testifies in a general way that he had paid in large sums to the treasury of the corporation, without specifying items, dates, and amounts, such testimony is not sufficient to comply with the rule and is a mere conclusion.

4. **Limitation of Actions:** DECEIT. Where the manager of a corporation, having control of its books of account, withdraws funds from the corporation and charges the same to himself on its books, and informs the officers or board of directors that such funds have been restored to the corporation, and points to entries upon the books evidencing the supposed payment, and thereby leads the directors of the corporation to believe that the debt had been liquidated, and, after the lapse of more than four years, the corporation discovers that the entry was not a true statement, and that payment had not been made, and brings an action against the manager to recover the amount, the defendant will not be permitted to avail himself of the statute of limitations as a defense.

5. **Appeal:** FINDINGS BY COURT: CONFLICT OF EVIDENCE. In a law action, where a question of fact has been submitted to the trial court, without the intervention of a jury, the court's finding is entitled to the same force and effect as the verdict of a jury, and, if based on conflicting evidence, will not be disturbed unless clearly wrong.

APPEAL from the district court for Dodge county: A. M. POST, JUDGE. *Affirmed in part, and reversed in part.*

*Courtright, Sidner, Lee & Gunderson,* for appellant.

*Cain & Johnson* and *Abbott, Rohn & Dunlap, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EVANS, JJ.

GOOD, J.

Plaintiff, Farmers Cooperative Mercantile Company of Scribner, Nebraska, is a cooperative corporation, organized under the laws of Nebraska and engaged in handling grain, lumber and other commodities. During the time of all the transactions involved in this controversy, Arthur H. Shultz was a stockholder and a member of the board of directors, and also president and manager of the corporation. Defendant Mary A. Shultz was the wife of Arthur H. Shultz, and she and the other defendants were shareholders in the corporation.

Plaintiff in its second amended petition declared on ten separate causes of action. The second cause of action

was against all of the defendants and was equitable in its
nature. The third cause of action was against Arthur H.
and Mary A. Shultz, and the other eight causes of action
were against Arthur H. Shultz alone. All of the causes,
save the second, were for money judgments and were legal,
rather than equitable, in their nature. By stipulation, the
parties waived a jury and submitted the case on the ten
causes of action to the court. Misjoinder of parties or.
causes of action is not raised. There was a finding and
decree for plaintiff and against all of the defendants on
the second cause of action, and a finding for defendants·
and judgment of dismissal on all of the other causes. Plain--
tiff has appealed from the finding and judgment on the ·
nine causes of action in which it suffered defeat, and the
defendants have filed a cross-appeal as to the second cause
of action. Since most of the discussion in this opinion
will relate to defendant Arthur H. Shultz, he will be re-
ferred to as defendant, while other defendants will be desig-
nated by name. Before taking up the discussion of the
separate causes of action, a preliminary general statement
seems advisable.

Plaintiff corporation was organized in June, 1913, with
an authorized capital of $25,000, divided into shares, each
of the par value of $5. The by-laws provided that each
shareholder should be entitled to but one vote, regardless
of the number ·of shares owned by him, and that no share-
holder could own more than 40 shares of the capital stock.
About the first of the year 1915 plaintiff desired to purchase
a mill and elevator property owned by a competitor, and,
with this in view, it amended its articles of incorporation
and by-laws so as to provide for an authorized capital of
$125,000, and permit a shareholder to own 1,000 shares of
the capital stock. At this time some difficulty was experi-
enced in securing sufficient subscriptions to capital stock to
raise the funds necessary to purchase the mill and elevator
property. Thereupon, the defendant agreed to subscribe
for and become the owner of 1,000 shares of capital stock,

provided he was made the manager of the corporation. Accordingly, he was selected as manager, and a written contract was entered into that he should be manager for a period of five years. He then subscribed for additional shares of stock so that his holdings were $5,000 in his own name. An additional $5,000 of the par value of the stock was issued to his wife, defendant Mary A. Shultz. It subsequently appears, however, that Mrs. Shultz never subscribed or paid for this stock, but that defendant paid therefor and really held the additional $5,000 in the name of his wife. Defendant also induced his mother-in-law, defendant Anna Mohr, to subscribe for 440 shares of capital stock, and his friend, Herman Witthinrich, at various times to subscribe for or purchase shares of stock until his holdings amounted to 1,000 shares, of the par value of $5,000. Defendant became manager of the corporation. At no time did plaintiff authorize or permit any dealings in grain futures, in the nature of gambling; nor did it permit or authorize any of its officers to engage in such dealings on its behalf.

Section 7 of plaintiff's by-laws provided: "The board of directors shall have full power to buy and sell shares at par value. A shareholder wishing to withdraw his stock for any reason shall present the same to the directors and they shall have full power to dispose of and consent to transfer of same."

For a number of years it was the custom of the plaintiff, when a shareholder desired to surrender his stock, to purchase the same and retire it or sell it to some other individual. However, in all of these transactions whereby stock was retired, it was either authorized in advance or subsequently ratified by the board of directors, except in the instances that are in controversy in this action.

Defendant continued to be manager until the 1st of March, 1921. Some time prior to this defendant became dissatisfied with the by-law which permitted but one vote to a shareholder, regardless of the number of shares of

stock held, and sought to have it changed. Neither the shareholders nor the directors would consent to this change. Thereupon, defendant tendered his resignation on the 1st of February, 1921, as manager and president of the corporation, which was accepted a few weeks later.

For its first cause of action plaintiff alleges that prior to the 5th of February, 1921, defendant purchased from various shareholders an aggregate of 344 shares of plaintiff's capital stock, of the par value of $1,720; that the certificates of stock were delivered to him, but were not formally transferred on plaintiff's corporate books; that, contrary to his duties and obligations as manager of the plaintiff, defendant, on the 5th of February, 1921, pretended to retire said 344 shares of capital stock, and took and received therefor, and thereby converted to his own use, money, bills receivable and other property of plaintiff, of the value of $1,720. Defendant admits the purchase of said 344 shares of stock and that the certificates representing these shares were delivered to him, and avers that, under the articles of incorporation and by-laws and the general usage and custom of the plaintiff, it was authorized to purchase and retire its capital stock, and that, in pursuance of such authority, custom and usage, he, as manager, had delivered the certificates representing said shares of stock to the plaintiff and that they were thereby retired; and defendant denies any liability on account of the money and property which he had received in payment for said shares of stock.

The evidence shows that defendant received from the funds and property of plaintiff $1,720, being the par value of the stock, and that he had placed the certificates representing these shares of stock in plaintiff's vault. Defendant argues that, under section 7 of the by-laws above quoted, and under the usage and custom prevailing, he, as manager, was authorized to retire and had retired the stock, and that the transaction whereby he received $1,720 of plaintiff's funds in payment therefor was legitimate and proper.

The evidence shows that on numerous occasions, prior to this time, shares of stock held by various parties were retired and canceled, but that in every instance this was done with the approval of the board of directors. It was either specifically authorized or subsequently ratified by the board. It is also disclosed that some time prior to this a shareholder had made application to the board to have his stock retired, and that the board of directors, at the suggestion of the defendant, declined to retire the stock and voted not to thereafter retire stock, it being the belief of the board at that time that the corporation was in need of all of the capital represented by its outstanding stock, and that it would be detrimental to its interests to decrease its capital stock. At the time defendant undertook to retire his stock, he had tendered his resignation, but the same had not yet been accepted. He did not present the matter to the board of directors and ask them to approve the retirement of his stock; nor did the directors at any time ratify the action of defendant, as manager, in attempting to retire it, but, on the contrary, disavowed his action.

We think section 7 of the by-laws does not require that stock shall be purchased or retired at the request of a shareholder, but goes no further than to authorize such action when approved by the board of directors. Nor does the evidence disclose that there was any custom or usage to retire stock, except by the approval of the board of directors. Whether the board of directors should retire a shareholder's stock upon his application was a matter for its discretion. Nowhere was the manager authorized to retire stock except by and with the approval of the board of directors, and during the six years in which defendant was manager, in every instance, up to this time, when he had sought to retire stock, he had applied for and secured the approval of the board in such transactions.

Under the facts disclosed, this 344 shares of stock was never legally retired, and defendant never acquired the right to the $1,720 which he took from plaintiff's funds in

payment therefor. The finding of the district court for defendant on the first cause of action is not sustained by the evidence.

For its third cause of action plaintiff alleges that on the 19th of December, 1916, the defendant and Mary A. Shultz, without authority from plaintiff and without its knowledge, withdrew $8,000 of its funds, charging the same on plaintiff's books to capital stock, as follows: "Deb. Capital Stock Mrs. S. $5,000, A. H. S. $3,000—$8,000," thereby pretending to reduce the outstanding capital stock of the plaintiff to the extent of $5,000 of the stock of Mary A. Shultz and $3,000 of the stock of defendant, and pretending thereby to surrender and cancel certificates for the corresponding amounts of plaintiff's capital stock; that the certificates were not actually surrendered or canceled; that a few months thereafter defendant reported to plaintiff that the withdrawal of said funds was a temporary proposition only, and stated and agreed that he would shortly reinstate such certificates and refund the $8,000 so withdrawn; that thereafter defendant reported to plaintiff the reinstatement of the said stock and the repayment of the $8,000, and thereby lulled the plaintiff into the belief that said funds had been restored to plaintiff; and that it had no notice to the contrary until the year 1921; that when defendant was interrogated as to the restoration of the said $8,000 defendant then stated that said funds were restored on March 28, 1918, and pointed out an entry on the books which he claimed represented the transaction; that on the 28th of March defendant made entries upon plaintiff's books showing credit to capital stock of $8,830, and this was the entry which defendant stated represented the restoration of the $8,000 theretofore withdrawn. Plaintiff avers that this was an untrue statement; that upon the same day defendant charged plaintiff's undivided profits account with $8,830 as an offset to the credit of the same amount to capital stock; that neither defendant nor Mary A. Shultz had anything in plaintiff's undivided

profits account which could offset or account for the said entries; and it is charged that it was a mere switching of the book entries, without any money transaction, and for the purpose of deceiving plaintiff, and that, in fact, neither defendant nor Mary A. Shultz ever restored said $8,000 to plaintiff. Plaintiff demands judgment for that amount.

Defendant admits that on the 19th of December, 1916, he delivered to plaintiff $8,000 of its capital stock, then owned by him, part of which was in the name of his wife, Mary A. Shultz; that he thereafter reissued said stock and repossessed himself thereof, and alleges that when he delivered the $8,000 par value of stock to plaintiff he intended to apply the same upon a then existing indebtedness of himself to plaintiff, but shortly thereafter, by speculation in grain, outside of and beyond the scope of his authority as manager of plaintiff, and upon his individual account, he secured profits of his own to the extent of said $8,000, and paid the same to plaintiff; and thereupon withdrew and again became the absolute owner of said $8,000 of stock. It is thus admitted that defendant surrendered stock to the company and obtained $8,000, and that he thereafter reissued the stock to himself and claimed to have thereafter paid the $8,000 to plaintiff. Defendant also pleads the statute of limitations as a defense.

Under the pleadings the burden is on the defendant to prove that he has repaid to plaintiff the $8,000 of stock when it was reissued to himself. The payment for the stock reissued was made from plaintiff's profit and loss account. Unless defendant had funds belonging to him in that account, it plainly appears that he has never repaid the $8,000. Defendant, however, testified in a general way that he did a "scalping" business on the grain market, from which he received large profits, and that the same were turned over to plaintiff and went into its cash account, and that therefrom he had to his credit in plaintiff's cash account more than $8,000 when the entries were made. He did not testify to any particular transaction; nor did he

point to any items which can be identified as representing such transactions. No items on the books are shown or pointed out that disclose that any money from this source went into plaintiff's treasury. It is also significant that prior to this time defendant had stated that the funds for this $8,000 arose out of other transactions. Under the circumstances, we think his statement is a mere conclusion, and not a statement of ultimate fact. It must be recalled that defendant was plaintiff's manager and stood in a fiduciary relation to plaintiff. If he had intermingled his own funds with the funds of the plaintiff, it was incumbent upon him to point out that he had funds in the plaintiff's cash account, to identify the transaction, and to point out the items which would represent his contributions to plaintiff's cash account.

From a careful examination of the evidence, it appears that defendant has not proved, by evidence that is clear and convincing, that he had funds of his own in plaintiff's cash account, or that he was entitled to withdraw therefrom $8,000. He has not met the burden that the law imposes upon him.

It appears that the action was not begun until more than four years after the withdrawal of the funds in question, but defendant was plaintiff's manager, in possession and control of the books of account, and caused an entry to be made thereon indicating that the $8,000 had been repaid, and reported to plaintiff's board of directors that it had, in fact, been repaid, and pointed to the entry upon the books which he now seeks to justify. By his conduct he intentionally led the plaintiff and its board of directors to believe that he had restored the $8,000 to plaintiff's treasury. To permit the defendant to defeat recovery on the ground of the statute of limitations would permit him to take advantage of his own wrong. Under such circumstances the law will deny him the right to avail himself of the statute of limitations as a defense.

The finding and judgment of the district court for de-

fendant on this cause of action is not sustained by the evidence.

For its fourth cause of action plaintiff charges that defendant wrongfully credited to himself on plaintiff's books $2,700, being a part of a remittance from the Flanley Grain Company, of Omaha, which plaintiff claims was owing to it.

For its fifth cause of action plaintiff alleges that in August and September, 1916, defendant remitted $3,000 of plaintiff's funds to the Flanley Grain Company for margins on grain-hedging contracts for plaintiff, and that a profit of $5,232.94 accrued from these hedging contracts and was remitted to plaintiff by the grain company; and that defendant improperly charged the $3,000 remitted to the Flanley Grain Company to himself on the plaintiff's books and appropriated the profits of the transaction to his own use.

For its sixth cause of action plaintiff avers that in September, 1916, defendant appropriated to his own use profits in the sum of $3,925, accruing to it on grain-hedging transactions, carried on for it by the Flanley Grain Company, and also appropriated the further sum of $1,000, which was theretofore standing to its credit on the books of the Flanley Grain Company and remitted by it to plaintiff.

For defenses to the fourth, fifth and sixth causes of action, defendant avers that the funds which plaintiff claims in these causes of action were all gains or profits arising from option transactions, carried on by defendant for his own account; that plaintiff had no part or interest in these gambling transactions and was entitled to no part of the winnings. The findings on these three causes of action were for the defendant.

Under the law, the finding of the district court in a law action has the same force and effect as the verdict of a jury, and, if based on conflicting evidence, it will not be disturbed unless clearly wrong. We have carefully read and examined the voluminous record, consisting of 800 pages, together with a large number of exhibits, and we find that, at best, there is conflict in the evidence, but there is ample

in the record to sustain the finding for defendant as to each of these causes of action.

For its seventh cause of action plaintiff alleges that in July and August, 1916, $1,600 of its funds was remitted to E. W. Wagner & Company, of Omaha, for margins on hedging contracts on the board of trade, carried on for plaintiff; that these hedging contracts resulted in a net profit of $1,135.28, which was remitted to plaintiff, and that defendant wrongfully appropriated this profit to his own use. For a defense defendant alleges that the transactions referred to in this cause of action were option deals on the board of trade, carried on for and on behalf of defendant, and that plaintiff had no interest therein and was entitled to no part of the winnings from the gambling transactions. There was a finding for defendant on this cause of action.

The most that may be said for plaintiff's contention is that there is some conflict in the evidence, but there is ample evidence to sustain the finding of the trial court.

For its eighth cause of action plaintiff alleges that in the spring of 1917 it had an account with the Nebraska-Iowa Grain Company for cash grain shipped, and also an account for hedging contracts on the board of trade; that on the 30th of April, 1917, the Nebraska-Iowa Grain Company remitted to plaintiff a check for $7,500, representing a balance of $3,697.72, due for cash grain, and $3,802.28, profits on the hedging contracts; that defendant received and appropriated said check to his own use and made no entry thereof on plaintiff's books. Defendant admits that on the 30th of April, 1917, he received from the Nebraska-Iowa Grain Company two checks, aggregating $7,500, but avers that at that time he had to his credit with the Nebraska-Iowa Grain Company profits on gambling transactions, carried on for his own account on the board of trade, in an amount largely in excess of $7,500, and that the check so received was on account of his profits arising from his gambling transactions and belonged exclusively to him, and that plaintiff had no property or interest therein. The

trial court found for defendant on the eighth cause of action.

The evidence as to this cause of action is in sharp and irreconcilable conflict, but we are unable to say, from an examination of the record, that the trial court's finding for defendant is not sustained.

For its ninth cause of action plaintiff alleges that defendant drew two checks, for $1,000 each, on its bank account and used the proceeds for gambling transactions for his own account, and improperly charged said checks on plaintiff's books to "grain hedge," and thereby appropriated $2,000 of plaintiff's funds.

For its tenth cause of action plaintiff alleges that defendant, on January 29, 1917, drew a check for $3,000 on plaintiff's bank account and used the proceeds for his own benefit and did not charge himself with the amount on plaintiff's books, and thereby wrongfully appropriated $3,000 of plaintiff's funds.

For a defense to the ninth cause of action defendant admits that he drew these checks and purchased drafts for his own use, and avers that they were charged to him on plaintiff's books and that he has accounted therefor. As to the tenth cause of action, defendant admits that he drew the check, as alleged, and avers that he was properly charged therewith on plaintiff's books, and that he has fully repaid the same to plaintiff. The trial court found for the defendant on the ninth and tenth causes of action.

The evidence as to the ninth and tenth causes of action is also conflicting. On behalf of defendant, it tends to show that he has been charged with these amounts and that he still has a small credit to his account, and, under the rule above quoted, the finding of the district court will not be disturbed.

For its second cause of action plaintiff alleges that on and prior to the 16th of February, 1921, defendant was the owner of, and there had been issued to him, 1,000 shares of plaintiff's capital stock; that defendant Witthinrich on

said date was the owner of 1,000 shares of capital stock which, at divers times theretofore, had been issued to him, or purchased by him from other shareholders; that defendant Anna Mohr was on said date the owner of, and there had been issued to her, 440 shares of plaintiff's capital stock; that defendant Mary A. Shultz, on and prior to said date, was the owner of, and there had been issued to her, 1,000 shares of plaintiff's capital stock; that on the 16th of February, 1921, defendant, as manager of plaintiff, made entries upon its books, charging stock with $17,200, and crediting bills receivable with $23,129.39, and that about the same time defendant paid into plaintiff in money $4,000, and defendant Witthinrich paid into plaintiff in money $2,000, and on the same day all of the certificates representing the above mentioned capital stock were, by the parties to whom they had been issued, surrendered and left in plaintiff's vault, and all indorsed by the respective parties to whom they had been issued as being sold and assigned to plaintiff; that upon the capital stock record, opposite the entry as to each of said certificates of shares, except as to the certificate held by defendant Anna Mohr, defendant made the following record: "Traded for bills receivable." Plaintiff alleges that these transactions were without authority from plaintiff, contrary to law, and that by means thereof defendants, by conspiring among themselves, undertook to retire the capital stock theretofore owned by them, and to surrender their certificates representing the same, and to take, and did take, bills receivable and property of plaintiff in the sum of $23,129.39. Plaintiff tenders to the defendants the said certificates of shares of stock, and tenders back to defendant A. H. Shultz $4,000 in money and to defendant Witthinrich $2,000, and asks to have the entire transaction rescinded and for the return of its bills receivable, which are particularly described.

As a defense to this cause of action, the defendants aver that defendant Shultz became manager of the plaintiff company and subscribed for 1,000 shares of its capital stock

upon the condition that he should become and continue to be manager of the plaintiff, and that if he ceased to be plaintiff's manager said 1,000 shares of capital stock should be redeemed at par value, and that, but for such agreement and understanding, he would not have subscribed for and become the owner of said 1,000 shares of capital stock. Defendants further aver that the shares of stock owned by defendants Anna Mohr and Herman Witthinrich were issued to them upon the express promise made by the defendant that if he ceased to be manager their stock should be retired and they would be repaid the par value thereof, and that, in pursuance of the provisions of section 7 of the by-laws, heretofore quoted, and the construction given them by the plaintiff company, and under the custom and usage, and in pursuance of the agreement between the defendant and the plaintiff, and between him, on behalf of plaintiff, and defendants Mohr and Witthinrich, they were entitled to have their stock retired when he ceased to be manager of the plaintiff, and that he ceased to be such manager on or about the 1st of March, 1921. Defendants acknowledge the payment of the $4,000 and the $2,000 by the defendants Shultz and Witthinrich, respectively, and the receipt of the bills receivable, as set out in plaintiff's second cause of action.

On the second cause of action the trial court found generally for the plaintiff and against the defendants and each of them, and that the attempted transfer of the 3,440 shares of stock of the par value of $17,200, accompanied by the payment of $6,000 in cash from the defendants to the plaintiff, and the transfer of $23,189.37 of bills receivable from plaintiff to defendant were unauthorized and invalid, and that plaintiff is entitled to a rescission of the transaction and to be repossessed of the bills receivable, which are particularly described, and that the defendants were each entitled to the delivery back to them of the certificates representing the shares of stock theretofore held by them. From the finding and decree, defendants have filed a cross-appeal.

Farmers Cooperative Mercantile Co. v. Shultz.

The evidence shows that when defendant became manager there was a contract in writing between him and the plaintiff, whereby he became manager for the term of five years. This was entered into about the 1st of January, 1915, and he continued as manager for more than six years. The written contract contains no provision for or reference to any agreement to retire stock of the defendant upon his ceasing to be manager. From the whole evidence and circumstances proved, different conclusions may have been reached as to whether there was any agreement between the defendant and plaintiff, and the evidence, as to an agreement between the plaintiff and defendants Mohr and Witthinrich, that their stock was subscribed for at various times upon any express condition, is far from convincing. There is nothing in the evidence from which it could be properly inferred that defendant Shultz was authorized to make any such agreement as is claimed existed between defendants Mohr and Witthinrich and the plaintiff company. Moreover, when the evidence is examined, the testimony does not indicate that the agreement, if any, was that of the company. If an agreement was made that their stock was to be retired, it was upon the personal agreement of defendant Shultz and would bind no one but himself. As pointed out in the discussion of the first cause of action, the by-law and the interpretation given it by the company, and the custom and usage, would not and did not authorize the retirement of this stock without the approval of the board of directors. It never was approved by the board or submitted to it for its approval. We are constrained to hold that the finding and decree of the trial court as to the second cause of action are sustained.

It follows, therefore, that the judgment as to the second, fourth, fifth, sixth, seventh, eighth, ninth and tenth causes of action is affirmed, and as to the first and third causes of action is reversed and remanded for further proceedings.

AFFIRMED IN PART, AND REVERSED IN PART.