MAYME CONROY, APPELLANT, V. JOHN H. GARRIES ET AL.,
APPELLEES.

FILED APRIL 13, 1934. No. 28844.

*Tibbets, Canaday & Hewitt,* for appellant.

*Carrico & Carrico,* contra.

Heard before ROSE and PAINE, JJ., and LIGHTNER, RED-
ICK and THOMSEN, District Judges.

REDICK, District Judge.

Action for foreclosure of real estate mortgage. April
30, 1927, Katherine E. and William L. Daugherty pro-
cured a loan in the sum of $4,000 from the firm of Hoep-
pner and Uerling who, at that time, were conducting a
real estate and loan business in the city of Hastings,
Nebraska. The Daughertys executed and delivered to
Ernest Hoeppner, a member of said firm, three coupon
bonds in the sums of $1,000, $1,000, and $2,000, respec-
tively, due April 30, 1930, with interest at 5½ per cent.
payable semiannually, and for the purpose of securing

said loan executed a mortgage upon 80 acres of land in Adams county. On March 18, 1930, Hoeppner sold, assigned and transferred these bonds and the mortgage to the plaintiff. July 18, 1927, the defendant John H. Garries purchased the land and received a warranty deed from the Daughertys subject to the $4,000 mortgage. The notes matured April 30, 1930, and shortly thereafter the defendants executed and delivered to Hoeppner three extension agreements extending the payment of the aforesaid bonds for a period of three years.

Interest was promptly paid on the notes by the defendants up to and including the interest coupon on the extension agreement due April 30, 1931. There is some dispute whether the coupon due October 30, 1931, was paid by defendants, but the books of the bank indicate that Hoeppner and Uerling paid the plaintiff $110 on that date, being six months' interest in full on $4,000.

The notes contained a provision that $100 or multiple thereof might be paid upon the principal at the due date of any coupon. May 27, 1931, the defendants paid Hoeppner and Uerling $1,004.60 upon the loan, being the principal of one of the notes, with interest from April 30 preceding. This sum was not paid to the plaintiff nor any notice given her of the payment, but, as above stated, they paid plaintiff the interest on the entire $4,000 up to October 30, 1931. On March 3, 1932, the firm failed and a receiver was appointed to take charge of its affairs. Defendants refused to pay the interest on the $4,000 bonds which became due April 30, 1932, but tendered plaintiff $82.50, being the amount of interest claimed by them to be due on the balance of said loan. This foreclosure action is based upon the default in the payment of the full amount of interest on $4,000 April 30, 1932.

Upon trial the lower court found and decreed that the payment by defendants of $1,000 to Hoeppner and Uerling constituted payment to the plaintiff, and that the tender of interest on the balance was a proper tender, and that, no default having been made by defendants, plaintiff is

not entitled to foreclosure. Plaintiff appeals and the only question presented is whether or not Hoeppner and Uerling were the agents of the plaintiff duly authorized to receive the payment in question; the defendants claiming they were such agents and the plaintiff denying that fact.

The case being in equity, the parties are entitled to a trial *de novo* on this appeal, and we have examined the record with great care. The evidence establishes without dispute the matters contained in the above statement of facts. The defendants had no knowledge of the assignment of the notes and mortgage to plaintiff and paid the interest regularly to Hoeppner and Uerling, receiving in each instance the appropriate coupon, except the one due October 30, 1931, payment of which is disputed, defendants testifying to such payment and that Hoeppner claimed he was very busy and would mail him the coupons. Upon making the payment of $1,000 defendants did not demand the return of their bond but took a receipt from the firm by Uerling who said he would give them proper credit.

There is serious dispute as to whether or not Hoeppner and Uerling had the bonds in their possession at the time of the interest payments. Defendant John H. Garries and his wife, Ura, both testify that, when they went to make the payments, Uerling, or the party receiving the payment, would go to another part of the banking room, and they would see him take the bonds and with a pair of scissors clip the coupons and bring them forward for delivery to defendants. The daughter of defendants, who testified that she was present when most of the payments were made, does not testify that she saw the coupons clipped from the bonds. On the other hand, plaintiff testifies that she had several transactions involving the purchase of loans from Hoeppner and Uerling, and that in every instance, including the loan in question, she took possession of the notes, mortgage and assignment, placed them in her safety deposit box in the First National Bank of Hastings, and that when coupons became due she would

go to the box and clip them and take them to Hoeppner and Uerling who would pay them by check and collect from the mortgagors. The plaintiff is corroborated by J. H. Uerling who testified that when plaintiff bought the notes and mortgage they were delivered to her together with the assignment, taken away by her, and were not thereafter in the possession of the firm, and that he never clipped any coupons, but that she would clip them and bring them in and they would give her a check. This presents a serious conflict on an important question of fact, and it is exceedingly difficult, if not impossible, upon a mere study of the printed record, to determine which witnesses are telling the truth. It may be observed, however, that the testimony of plaintiff and Uerling is more consistent with ordinary business usage in such matters, the purchaser of securities generally taking them into his own possession. In this situation we think it proper to take into consideration the finding of the trial judge who saw the witnesses and heard them testify and was thus in better position to judge of their credibility than is this court. *In re Estate of Waller,* 116 Neb. 352; *Peterson v. Winkelmann,* 114 Neb. 714; *Jones v. Dooley,* 107 Neb. 162. We think it must be taken as established that the securities were not in the possession of Hoeppner and Uerling at the time of the payment of interest or the $1,000. As to the possession of the extension agreement, the evidence is not so specific, but the receiver testifies that neither the original securities nor the extension agreement were found among the papers of the firm when he took possession, warranting an inference that they were with plaintiff. Up to this point the evidence will warrant the inference that Hoeppner and Uerling were the agents of the plaintiff for the collection of the coupons, but none that they were authorized to collect the principal. *Walsh v. Peterson,* 59 Neb. 645; *Campbell v. O'Connor,* 55 Neb. 638; *Richards v. Waller,* 49 Neb. 639.

There is, however, further evidence bearing upon the

question of the authority of Hoeppner and Uerling to receive payment of the principal as the agent of the plaintiff. It appears that the firm was engaged in the business of making loans and selling the same to persons generally in Hastings and vicinity; also that they had sold to the plaintiff from four to seven (plaintiff admits four) other loans, and that their custom of handling them was to collect, not only the interest, but the principal and pay the same to the plaintiff. On this point the plaintiff testifies on cross-examination: "Q. Mr. Uerling did your loan business generally, didn't he? A. I went there to purchase my loans, but that's about all. Q. You had several? A. Yes, sir. Q. And you had some there which had been paid through Hoeppner and Uerling and you got your money? A. Some of them; yes. Q. And that was the way you generally collected your money, through Hoeppner and Uerling? A. I went in there and bought bonds and mortgages. * * * Q. I understood you to say you had five, six or seven loans there at different times within the last five years. * * * A. Well, I had about four, I think. Q. And some of those loans were paid, weren't they? A. No. Q. Haven't you had some loans paid there within the last five years? A. Yes, one. Q. And that was paid through the office of Hoeppner and Uerling? A. Yes, sir. Q. And Hoeppner and Uerling paid you the money? A. Yes, sir. Q. And it was your custom to go to the office of Hoeppner and Uerling to get your interest on the loans? A. Yes, sir. Q. And it was your custom to go there to get your principal when it was paid in? A. Yes; when it was paid in. Q. The principal that was paid in, was that paid in when the loan matured? A. Yes; some of them. Q. And when you testify that had been paid, that was when the loan matures, was it? A. I don't recall that; it was so long ago." This testimony of plaintiff is corroborated by that of Uerling, and while his credibility as a witness may be subject to serious question, it is entitled to some weight as being in consonance with plaintiff's admissions. Proof of authority of party to be charged as agent may

be implied from facts and circumstances arising in the course of the relations between the holder and the alleged agent with regard to the note. *Kile v. Zimmerman,* 105 Neb. 576.

We think this evidence establishes that, while the plaintiff retained possession of her securities, she relied upon Hoeppner and Uerling to look after them and collect the interest and principal when due and pay it to her; that she expected them to do that very thing. These facts, in law, constituted Hoeppner and Uerling her agents, not only ostensibly, but actually, for the collection of the principal. *Bliss v. Falke,* 125 Neb. 400. The mere fact that Hoeppner and Uerling did not have possession of the notes is not conclusive of no authority to collect the principal. *Thomson v. Shelton,* 49 Neb. 644. We therefore conclude that the payment of $1,000 and interest was made by defendants to the agents of the plaintiff and she must bear the loss occasioned by their dishonesty.

Plaintiff cites a number of authorities from this state to the proposition: "If a mortgage secures a debt evidenced by negotiable paper, a mortgagor must, at his peril, pay it to the legal owner and holder of such paper." This is correct so far as it goes, but is an incomplete statement of the principle, because the mortgagor may pay to the holder of his paper "or his authorized agent," and there was no question of agency in any of the cases cited. In one of those cases, *Bettle v. Tiedgen,* 77 Neb. 799, it was held that "such payment to said original mortgagee will not, *in the absence of proof of agency, estoppel, or the like,* operate as a discharge of the debt secured by such mortgage."

Where a purchaser of securities from an investment or loan company, in the regular course of their dealings, permits the company to collect the interest and principal, she thereby constitutes such company her agent for those purposes. *Harrison Nat. Bank v. Austin,* 65 Neb. 632; *Holt v. Schneider,* 57 Neb. 523; *Stuart & Co. v. Stonebraker,* 63 Neb. 554; *Pine v. Mangus,* 76 Neb. 83; *Phoenix Ins.*

*Co. v. Walter,* 51 Neb. 182; *Bliss v. Falke,* 125 Neb. 400; *Faulkner v. Simms,* 68 Neb. 295.

We think the evidence establishes the agency of Hoeppner and Uerling, and finding no error in the record, the judgment of the district court is affirmed, with leave to defendants to bring up the default of interest or otherwise within 60 days from the going down of the mandate, and in such event the district court shall dismiss the action without prejudice at the cost of the plaintiff. If default is not made good within the time limited, the district court is directed to enter a decree of foreclosure for the sum of $3,000 principal, together with interest and any other sum to which plaintiff may be entitled.

AFFIRMED, AND REMANDED, WITH DIRECTIONS.