360

SEGREE JOHNSON ET AL., APPELLEES, V. MARY E. KINDIG
ET AL., APPELLANTS.

FILED JUNE 12, 1934.   No. 28837.

*Charles E. Bruckman* and *L. S. Dunmire,* for appellants.

*Stiner & Boslaugh* and *Edmund P. Nuss, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and THOMSEN, District Judge.

ROSE, J.

Segree Johnson and Ella O. Whitnak, plaintiffs, sued Mary E. Kindig, William Delehunty, Francis L. Young-

blood, Villa Lucier and Albertena Junker, defendants, to foreclose a mortgage on 80 acres of land in Adams county. Mary E. Kindig, widow, defendant, was the sole mortgagor, and in an answer to the petition she pleaded payment out of proceeds of a second mortgage on the same land. The other defendants, with the exception of Youngblood, who is a nominal party only and not hereinafter considered a defendant, alleged they owned the second mortgage and prayed for a decree satisfying the first mortgage and adjudging the second mortgage to be the first lien.

This case is one of a lamentable series in which loan brokers received and embezzled funds entrusted to them for the payment of debts secured by mortgage. It belongs to a class of cases in which the court is powerless to relieve both of two adverse litigants from losses caused by the fraud of third persons. The controlling question presented by the pleadings is: Were the loan brokers agents who were authorized to receive payment for the holders of the bonds secured by the first mortgage?

Upon a trial of the cause the district court decreed that the first mortgage was the first lien on the 80 acres of land described in the petition and that the second mortgage was the second lien. Foreclosure of the first mortgage was ordered. Defendants appealed and plaintiffs took a cross-appeal, claiming more interest than the district court allowed.

The only mortgagor, Mary E. Kindig, defendant, executed two bonds November 28, 1921, due five years thence, one for $2,000 and the other for $1,000. Ernest Hoeppner was named payee in both bonds which were secured by a mortgage on 80 acres of land in Adams county. The mortgage was duly recorded. Payee assigned both bonds and the mortgage securing them to Svend Johnson February 4, 1922. Mortgagor paid $500 on the debt May 19, 1925. By means of an extension agreement between her and the assignee, dated November 17, 1926, the time for the payment of the remainder of

$2,500, was extended to November 28, 1931. On November 28, 1926, assignee, Svend Johnson, died. By his will Segree Johnson, widow, and Ella O. Whitnak, daughter, plaintiffs, became owners of the bonds secured by the first mortgage, reduced, as the debt was, to $2,500.

For the purposes of paying her debt of $2,500, and borrowing additional money, the same mortgagor, Mary E. Kindig, procured from Hoeppner & Uerling, December 19, 1930, a 3,800-dollar loan, evidencing the new debt by three 1,000-dollar bonds and one 800-dollar bond, all secured by a new mortgage for $3,800 on the same 80-acre tract described in the first mortgage. The four new bonds and the second mortgage were payable to Youngblood, who, December 29, 1930, assigned two of the 1,000-dollar bonds to William Delehunty, defendant, the other 1,000-dollar bond to Villa Lucier, defendant, and the 800-dollar bond to Albertena Junker, defendant.

From the proceeds of the 3,800-dollar loan, mortgagor, Mary E. Kindig, paid to Hoeppner & Uerling the amount of the unpaid debt and interest due on the bonds secured by the first mortgage, but they never turned the money over to plaintiffs. The loan brokers, however, did pay to plaintiffs the interest on the principal debt until the brokerage firm went into the hands of a receiver March 2, 1932, on account of insolvency.

Plaintiffs, who own the bonds secured by the first mortgage, never received payment of the debt owing to them by mortgagor and the first mortgage has never been satisfied of record. Plaintiffs never surrendered their bonds or their mortgage to mortgagor nor to any one for her and still hold them. Foreclosure of this first mortgage is the relief sought by plaintiffs.

The burden was on mortgagor and the defendants who are holders of the bonds secured by the second mortgage to prove that payment of the bonds secured by the first mortgage was made to some one authorized to receive it. *Davis v. Polak,* 126 Neb. 640. There was no direct evidence that Hoeppner & Uerling had authority to receive

payment for plaintiffs, but it is contended that circumstantial evidence proved ostensible authority upon which mortgagor had a right to rely. It is true the loan brokers were engaged in lending money, in selling bonds and in collecting for holders of securities interest and principal; that mortgagor paid them semiannual interest as coupons therefor matured; that a payment of $500 on the principal was made; that an extension of time for payment of the first mortgage was executed; that plaintiffs indirectly received the benefit of such payments. It does not follow, however, that a preponderance of the evidence proves that Hoeppner & Uerling had authority from plaintiffs to receive for them the unpaid principal. The mere fact that a loan broker received interest on bonds and turned it over to the bondholder may be a circumstance tending to prove agency to do so, but does not necessarily prove authority to collect the principal. *Conroy v. Garries*, 126 Neb. 730. Neither does the mere fact that a loan broker received a partial payment on the principal debt and subsequently delivered the money to the creditor establish agency to collect payment in full. All the facts and surrounding circumstances must be considered. A familiar rule of equity which has been stated by courts in different forms reads as follows:

"Where one of two parties to transactions must suffer a loss through the misconduct or the wrongs of a third person, the superior equities will be determined from all of the material circumstances, and the burden will be allowed to fall where equity and justice place it." *Omaha Elevator Co. v. Chicago, B. & Q. R. Co.*, 104 Neb. 566. See, also, *Rehmeyer v. Lysinger*, 109 Neb. 805; *First Nat. Bank v. First Nat. Bank*, 111 Neb. 441; *Deleski v. Peters Trust Co.*, 115 Neb. 547; *Nebraska State Bank v. May*, 117 Neb. 262.

Who incautiously trusted the perpetrators of the wrong? From whom did the loan brokers procure the means to defraud innocent third persons? Who, by observing the law and exercising ordinary business judgment, could

have prevented the fraud and the resulting injuries? Equity raises these questions. Mortgagor knew, when parting with her money, that Ernest Hoeppner, mortgagee, did not then own the bonds or have them in his possession. On their face they were not payable at the office of Hoeppner & Uerling, but at Hastings. Mortgagor admitted she trusted Hoeppner. She trusted her son Arthur to make for her payments of interest and principal. When he paid an instalment of interest, he did not get the interest coupon evidencing the amount due. He knew the interest coupons were not then in possession of Hoeppner & Uerling and that it took several days after a payment to get the interest coupon. He knew also that the loan brokers did not have the bonds and he never received them. He accepted from Hoeppner & Uerling a receipt for his mother's money, instead of the bonds, with the knowledge of himself and his mother that they had been assigned to Svend Johnson. The son knew that business usage required him to get the bonds when paying the principal, because he asked for them at the time and was told it would take some time to get them. He thus incautiously put into the hands of the loan brokers, his own agents, the means of embezzlement and of the resulting injury to the holders of the unpaid bonds secured by both mortgages. He and his mother had not been informed of the actual business relations existing between the loan brokers and the holders of the bonds and were not justified, under the circumstances disclosed by the evidence, in assuming the former's authority to act for the creditors in collecting the unpaid debt. Implications of ostensible authority were overcome by probative evidence that mortgagor and her son made Hoeppner & Uerling their own agents to seek the holders of the bonds, to make payment, to get the bonds, to release the first mortgage of record and to return the papers to the debtor.

Plaintiffs, the holders of the bonds secured by the first mortgage, did nothing to mislead mortgagor or the hold-

ers of the bonds secured by the second mortgage into believing that Hoeppner & Uerling were authorized as agents to make the collections. The first mortgage stood on the public records unsatisfied. The assignment thereof had been duly recorded. Plaintiffs kept possession of their unpaid bonds and their unpaid interest coupons. They did not surrender a bond or a coupon until it was paid. They did not trust the loan brokers with any unpaid bond or unpaid interest coupon in these transactions or mislead defendants into assuming the agency upon which they now rely. The trial court, therefore, made no mistake in decreeing the first mortgage to be in full force and to be the first lien and the second mortgage to be the second lien on the land described in the first mortgage. It follows that defendants are not entitled to any relief on their appeal.

The cross-appeal of plaintiffs, however, discloses an error to their prejudice in the failure to allow them all the interest authorized by contract and statute. Lawful interest, where the rate is not fixed by statute, is the subject of contract as limited by law, and is not allowable at a different rate by a court of equity. Comp. St. 1929, secs. 45-101 and 45-103; *Havemeyer v. Paul,* 45 Neb. 373; *Connecticut Mutual Life Ins. Co. v. Westerhoff,* 58 Neb. 379; *Portsmouth Savings Bank v. Yeiser,* 81 Neb. 343; *Calloway v. Doty,* 108 Neb. 319. The cross-appeal is sustained, the judgment reversed as to interest and otherwise affirmed and the cause remanded for the specific purpose of correcting the. error by allowing interest according to contract and statute.

JUDGMENT ACCORDINGLY.