FIRST TRUST COMPANY OF LINCOLN, TRUSTEE, APPELLEE AND CROSS-APPELLANT, V. EDWARD R. DANIELSON ET AL., APPELLEES: HELEN SCHOPPE ET AL., APPELLEES AND CROSS-APPELLEES: L. A. RICKETTS, TRUSTEE, APPELLANT AND CROSS-APPELLEE.

270 N. W. 680

FILED FEBRUARY 5, 1937. No. 29791.

*Boehmer & Boehmer,* for appellant.

*Beghtol, Foe & Rankin, B. Frank Watson, R. O. Williams, I. D. Beynon* and *Willis R. Hecht, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and RAPER and CHAPPELL, District Judges.

ROSE, J.

This is a suit in equity to foreclose a mortgage on 9.15 acres of land adjacent to the city of Lincoln.

When the property was owned by Edward R. Danielson and E. Maude Danielson, they executed, December 28, 1928, a mortgage thereon in favor of the Lincoln Safe Deposit Company for $42,500, payable June 26, 1929, securing bonds aggregating that sum and naming the Lincoln Trust Company as trustee for holders of secured bonds, if subsequently sold. By renewal, payment of the bonds was extended to December 26, 1933. Mortgagors deeded the land to the Danielson Floral Company June 2, 1933, and the latter, subject to the unpaid principal debt of $10,000, conveyed the title to Helen Schoppe. Bonds evidencing the unpaid principal debt of $10,000 with interest were in the hands of different holders.

Both the Lincoln Trust Company, trustee, and the Lincoln Safe Deposit Company, mortgagee, were adjudged bankrupts July 9, 1932, and for them L. A. Ricketts became trustee in bankruptcy July 21, 1932. The First Trust Company of Lincoln was appointed trustee to succeed the bankrupt, Lincoln Trust Company, as trustee for unpaid bondholders.

The First Trust Company, successor-trustee, plaintiff, declared the entire unpaid debt due on account of defaults and sued to enforce by foreclosure of the mortgage, payment of two 500-dollar bonds; seven 1,000-dollar bonds and two 1,000-dollar bonds, the latter of which had fallen into the hands of the trustee in bankruptcy, a total of $10,000 and interest or that part of the principal debt remaining unpaid.

The 42,500-dollar mortgage, in addition to the Lancaster

county property, was a lien on 240 acres of farm land owned by the Danielsons in Polk county. Out of the net proceeds of part of the Polk county land, the Lincoln Trust Company, now bankrupt, received March 2, 1932, $5,850.78, money never received by any bondholder, unless the holder of the two 1,000-dollar bonds now in the hands of the trustee in bankruptcy is excepted. His plea is that these two bonds are unpaid, are assets of the bankrupt estate of the Lincoln Trust Company and are secured by the mortgage in the course of foreclosure herein.

In partial defense to the claims of plaintiff and the trustee in bankruptcy, Helen Schoppe and Leon N. Schoppe, who are in possession of the mortgaged land adjacent to Lincoln under the deed from the Danielson Floral Company, alleged that the payment of the $5,850.78 was payment of the two 1,000-dollar bonds in the hands of the trustee in bankruptcy and that the remainder, or $3,850.78, was payment to other bondholders and as such should be credited on the unpaid bonds.

The district court had before it the parties, the pleadings and the evidence necessary to the determination of the following questions:

Was the payment of $5,850.78 out of the proceeds of the Polk county land to the Lincoln Trust Company a payment of the two 1,000-dollar bonds now in the hands of the trustee in bankruptcy? If so, was the remainder, or $3,850.78, a payment to which the Schoppes were entitled to have credited on the mortgage indebtedness?

The district court answered the first of these questions in the affirmative and decreed cancelation of the bonds in the hands of the trustee in bankruptcy. The other question was decided in favor of the Schoppes who were allowed credit *pro rata* for $3,828.45 on the remainder of the bonds.

The trustee in bankruptcy appealed from that part of the decree canceling the two bonds in his possession as paid and plaintiff took a cross-appeal from the allowance of $3,828.45 as a credit on the mortgage indebtedness.

The appeal of the trustee in bankruptcy is clearly without merit. The bonds claimed by him as unpaid and as part of the bankrupt estate were found in the assets of both bankrupts. The managing officer of both was the same. Proceeds of the sale of part of the Polk county land was received in the form of a bank draft payable to the Lincoln Trust Company. It was indorsed by that company and also by the Lincoln Safe Deposit Company. The indorsements were made by the managing officer of both indorsers. Both became responsible to the owner of that fund for the custody and disposition of it. They used the proceeds of the draft in their own business with knowledge of all the facts. They knew the draft represented proceeds of real estate which had been mortgaged to pay outstanding bonds. They had sold and repurchased these two identical bonds. They had possession of them when they received the draft. In dealing with their own bonds in their own possession while accepting and using funds created by security for payment, they acted for themselves. They were not entitled to both the bonds and money in their hands to pay them. They took the money. Neither trusteeship under the mortgage nor subsequent bankruptcy justifies their claim. The trustee in bankruptcy is in no better position. In equity the bonds should be treated as paid. Helen Schoppe, by taking title subject to the mortgage, did not bind herself to pay bonds satisfied by payment. Facts proved without dispute show conclusively that the district court ruled correctly on this branch of the case.

The traversed plea of Helen Schoppe, that the remainder of the proceeds of Polk county land, or $3,850.78, should be credited on the mortgage indebtedness, presents a different situation. It is a plea of payment. There is a familiar rule of law that a party pleading payment as a defense has the burden of proving it. *Farmers Cooperative Mercantile Co. v. Shultz*, 113 Neb. 801, 205 N. W. 288. Payment of negotiable bonds secured by mortgage without obtaining possession of them may be at the risk of the debtor. *Davis v. Polak*, 126 Neb. 640, 254 N. W. 246; *John-*

*son v. Kindig,* 127 Neb. 360, 255 N. W. 236. The unpaid bondholders never received any part of this fund. They did not know of its existence. They had no part in wrongdoing of any kind. They kept possession of their bonds and still hold them. Edward R. Danielson, mortgagor, and the companies bankrupt now were dealing with each other and were familiar with the facts. It was the sale of part of the Danielson land that produced the proceeds. Danielson did not demand the surrender of any bonds when he entrusted the proceeds to companies now bankrupt, though he knew some of the bonds were outstanding. There is nothing to show he demanded credit on the mortgage indebtedness or on the bonds. The proof is that he was negotiating with the companies now bankrupt for an additional loan with a view to using his proceeds in his own business. Regarding the Lincoln Trust Company as trustee for the bondholders for the purposes of collection, Danielson did not evince an intention to devote his proceeds to payment of bonds, but on the contrary, with the consent of that company, allowed the fund to remain in its possession. He had at hand the means of protecting himself and the bondholders from a loss by demanding a surrender of bonds in the amount of his proceeds or a return of his money. He pursued neither course. He trusted the companies now bankrupt. The other bondholders did not.

Where funds have been diverted from proper channels by trustees or others, courts sometimes find it impossible to protect all innocent parties from loss and are compelled to resort to the following rule of equity:

"Where one of two innocent persons must suffer a loss occasioned by the wrongful act of a third person, the one who made it possible for the third person to commit the wrongful act should bear such loss." *Nebraska State Bank v. May,* 117 Neb. 262, 220 N. W. 276.

Failure to prove a course of dealing which shows that payment to the Lincoln Trust Company was payment to other bondholders distinguishes the case at bar from *Conroy v. Garries,* 126 Neb. 730, 254 N. W. 262.

146

When the entire record is considered with the rules of law and equity applicable, the evidence preponderates in favor of plaintiff on the issue under consideration. That part of the judgment crediting $3,828.45 *pro rata* on the outstanding bonds is therefore reversed and the cause remanded, with directions to the district court to correct its decree accordingly as the record now stands.

AFFIRMED IN PART AND REVERSED IN PART.