JOHN STUART & COMPANY, LIMITED, APPELLANT, V. ALBERT J. STONEBRAKER ET AL., APPELLEES.

FILED JANUARY 8, 1902. No. 10,054.

Commissioner's opinion, Department No. 1.

1. **Promissory Note: PURCHASER: AGENCY.** Where one purchasing a note constitutes his assignor, who is the original payee named therein, his agent for the collection of both interest and principal, and such agent, in the exercise of such authority, does collect both interest and principal, the holder can not, after his agent's failure to account, repudiate such agency, stand upon his rights as a bona-fide holder for value, and collect a second time from the maker, although the latter has paid the agent in the belief that he was still the holder of the note.

2. **Payment: ESTOPPEL: SATISFACTION.** If the maker pay other than the rightful owner of the note, he can not rely on facts unknown to him, and not influencing his action, as an estoppel; but, if the money has reached the hands of an agent authorized to collect for the holder, such payment will be held a satisfaction of the debt.

3. **Evidence: FINDING.** *Held,* That the finding of the trial court that the maker paid to the authorized agent of the holder is sustained by the evidence.

APPEAL from the district court for Antelope county. Heard below before ROBINSON, J. *Affirmed.*

*Charles Riley* and *C. C. Flansburg,* for appellant.

*N. D. Jackson, contra.*

KIRKPATRICK, C.

This is a suit brought in the district court of Antelope county by appellant to foreclose a mortgage for the sum of $400, dated October 31, 1887, and due November 1, 1892, executed by appellees A. J. Stonebraker and wife to the Globe Investment Company of Boston, Massachusetts. The petition is in the usual form; alleges the execution of the note and mortgage to the investment company; that the investment company, before maturity, sold the same to appellant; that no action at law had been commenced; that the note and mortgage had not been paid; and prayed foreclosure. Appellees answered, admitting the execution of the note and mortgage, and that the same had been sold to appellant; and alleged payment of all coupons, and of the principal of the note and mortgage to the Globe Investment Company, at Boston, where the note was payable, at maturity, in good faith, and without any knowledge that the investment company was not the owner of the note and mortgage. Trial was had to the district court, which resulted in a finding and judgment that the note and mortgage had been paid and satisfied, from which judgment appellant brings the case to this court for review upon appeal.

The facts disclosed by the evidence, briefly stated, are as follows: On October 31, 1887, appellees executed the note and mortgage in suit to the Globe Investment Company, a corporation, located and doing business at Boston, Massachusetts. Soon after receiving this note and mortgage, the Globe Investment Company sold them to appellant. Appellant afterwards sold them to some other party, whose name, so far as the record is concerned, is not disclosed. After-

wards, and long before the maturity of the note and mortgage, appellant repurchased them, and was the owner at the time payment was made. No assignment of the mortgage was ever placed of record in Antelope county. Appellees paid the coupons from time to time as they matured, by direction of the Globe Investment Company, to its Kansas City office, and received the coupons shortly after such payments. In the latter part of October, 1892, and a few days before the maturity of the loan, appellees procured a draft for $414, being the amount of the principal debt and the last coupon maturing, and paid the same to the Kansas City office of the investment company. Appellees received a receipt for this payment, and also the last coupon, and some time later received a release of the mortgage, which was duly placed of record in Antelope county. The Kansas City office notified the investment company at Boston of the payment of this loan in full, and the books of the investment company at Boston show the loan paid. Stuart & Co., Limited, about the time of the maturity of the note and mortgage, acknowledged receipt of the $14 in payment of the last coupon. It seems the investment company, after collecting the $414, retained the principal and remitted the $14 to appellant. It is disclosed by the record that the investment company entered into an arrangement with appellant by which appellant purchased and negotiated a large number of farm mortgages from the investment company, the amount aggregating about $1,500,000. It purchased and negotiated this paper under an agreement by the terms of which the investment company paid appellant in cash a two per cent. commission on all loans purchased or negotiated in Europe by appellant, and, in addition, the investment company agreed and undertook to look after all these loans, collect both principal and interest, look after the insurance when the same expired and foreclose the mortgages when in the judgment of the officers of the investment company such action was necessary. All of this work, with the exception of the foreclosure of mortgages, was done by the investment company free of expense to appellant. The

testimony very clearly establishes this arrangement. From the mass of testimony introduced in the case we quote the following, from the testimony of J. Lowell Moore, one of the officers of the investment company:

Q. You had negotiated the loans, and you undertook to give them such care as you thought they needed, and out of that care the practice of looking after them came. Is that correct?

A. The company's whole business was based on the understanding and agreement that it should take care of the loans and make all collections. It could not have sold any loans if its clients had been obliged to collect from the western borrowers, or look after the distant securities. Neither could a company guarantee and advance payments if it did not control collections and the securities. The company published its agreement to collect and care for the securities, and every investor expected it to do so.

R. Heaton Smith, one of the managing directors of the appellant, testified upon this question as follows:

Q. What agreement did the plaintiff have with the Globe Investment Company about the collection of the principal and interest of the loans represented by the notes and mortgages purchased by the plaintiff of the Globe Investment Company, or sold by the plaintiff for the Globe Investment Company?

A. There was no agreement, in the sense of a binding legal agreement on the subject. I understood that the Globe Investment Company would, and they did in fact, collect principal and interest without charge or expense to the purchaser, acting, in so doing, as the agents of the mortgagors, whose payments to them included the work of receiving and distributing principal and interest.

The latter part of the answer of the witness Smith quoted is a conclusion of the witness to the effect that the investment company, in making the collection of principal and interest, acted as agents of the mortgagors. The trial court, from all the evidence in the case, found that the investment company was acting as agent for the appellant

in these collections, and such finding seems to be abundantly supported by the evidence. It is further disclosed by the evidence that appellant was an owner of stock in the corporation known as the Globe Investment company; that the officers of appellant visited the office of the investment company, had access to and inspected its books, and had thorough and complete knowledge of its mode of doing business, and knew that it was collecting both principal and interest of loans negotiated by it, and in all other respects was treating the loans as though it still owned them. By permitting the Globe Investment Company to have such charge of the loans, it constituted the investment company its agent in making the collections, and in this case the record discloses that the investment company was authorized to collect both principal and interest; and, this being true, the payment by appellees to such agent must be held to be payment to the principal, and result in the satisfaction of the note and mortgage.

It is contended by counsel for appellant that, inasmuch as appellees dealt with the investment company, and made payments to it, believing that it was still the owner of the note and mortgage, appellees can not be protected in such payment. This proposition would undoubtedly be tenable if payment had been made to some person not authorized to receive it. But the rule has no application to the case at bar. In this case the money came into the hands of the person duly authorized to receive it, and whether appellees dealt with the investment company as the owner or as agent of another is wholly immaterial. This rule is not violative of the rights of a bona-fide holder for value, and is fully sustained by the reasoning in the case of *Exchange Nat. Bank v. Johnson*, 30 Fed. Rep., 588, wherein it is said: "If the maker pay other than the rightful owner of the note, he can not rely on facts unknown to him, and not influencing his action, as an estoppel, but if the facts be of a character that establish an agency for collection, that is a defense against repayment."

It follows from what has been said that the judgment of

. the trial court in finding that the note and mortgage in suit had been paid is fully sustained, is right, and it is therefore recommended that the same be in all respects affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the trial court is

AFFIRMED.