DAVID F. KILE, ADMINISTRATOR, APPELLEE, V. JULIA ZIM-
MERMAN ET AL., APPELLANTS.

FILED JANUARY 19, 1921. No. 21221.

Principal and Agent: COLLECTION OF NOTE: AUTHORITY OF AGENT. Where
one not in possession of a note assumes to collect both principal
and interest as agent of the holder, proof of his authority to re-
ceive payment of principal may be implied from facts and cir-
cumstances arising in the course of the relations between the
holder and the alleged agent with regard to the note, justifying
the inference that it was intended that the latter should be em-
powered to collect both principal and interest, and such inference
will be aided by the fact that the note contains an option to the
maker to pay part or all of the principal on any interest paying
date.

APPEAL from the district court for Lancaster county:
FREDERICK E. SHEPHERD, JUDGE. Reversed and dismissed.

Hazlett, Jack & Laughlin and Frank A. Peterson, for
appellants.

Sam B. Iams, contra.

DORSEY, C.

This is a suit to foreclose a mortgage upon a residence
property in the city of Lincoln given to secure a promis-
sory note for $500, executed May 5, 1910, by Effie L. Ayers,
who appears in the suit as the defendant and appellant
Effie L. Grace. The payee of the note was Stella Kile,
whose husband brings this suit as administrator for his de-
ceased wife. Miss Ayers procured the money for which the
note and mortgage in suit were given from Mrs. Kile,
through John S. Reed, who had previously been instrumen-
tal, as a real estate agent, in selling Miss Ayers the proper-
ty which she mortgaged to secure the loan. In 1913 Miss
Ayers, or Mrs. Grace, as she then was, conveyed the proper-
ty to her mother, the defendant and appellant Julia Zim-
merman, who assumed the payment of the note and mort-

gage. The defense was that the note had been paid in full
to John S. Reed, who, the appellants averred, was the agent
of Mrs. Kile duly authorized to receive payment. It is un-
disputed that the full amount of the note, both principal
and interest, was in fact paid to Reed, and that he never
accounted for it to Mrs. Kile. His agency and authority
were controverted. The court below found for the ad-
ministrator upon this issue, and from its decree foreclos-
ing the mortgage this appeal is taken.

The appellants never came into contact with Mrs. Kile,
either personally or by letter, and the business relative to
the note and mortgage was transacted wholly through
John S. Reed. The note originally had ten coupons at-
tached to it, each for $15, representing the semi-annual in-
terest for the period of five years which the note had to
run before it matured on May 5, 1915. The first two pay-
ments of interest were made to Reed by Mrs. Grace in
person, and she testified that he clipped a coupon each
time from the note and handed it to her, after marking it
"paid." After that Mrs. Grace removed from Lincoln and
remitted Reed for the interest and received the canceled
coupons by mail until she conveyed the property to her
mother in 1913. Mrs. Zimmerman made three payments
to Reed; the first on November 5, 1913, for 273, being
$250 on principal, $15 on interest, and $8 to apply on in-
surance upon the mortgaged property; the second on April
15, 1914, for $132.50, including $125 on principal and $7.50
on interest; the third on October 26, 1914, for $128, in
payment of the remainder of principal and interest on the
loan. For each of these payments Reed gave her a receipt,
specifying the items included and the fact that they were
paid upon the note and mortgage in suit. Mrs. Zimmer-
man received none of the coupons and never saw the note.
She did not demand the note or mortgage or a release when
the loan was paid off, but did ask for the abstract of title,
which she thought would be sufficient evidence of pay-
ment. Reed claimed he did not have the abstract when
she first asked him for it, but sent it to her later.

Mrs. Zimmerman received no notices from Mrs. Kile and heard nothing more of the matter until several months after Mrs. Kile's death. This is explained by the fact that, after the note fell due according to its terms in May, 1915, Reed procured from Mrs. Kile an extension of it for three years, and thereafter continued to pay her the interest on its due dates, as if he had collected it from Mrs. Zimmerman. He made the last payment of interest in November, 1917, shortly after Mrs. Kile's death, but on May 5, 1918, the three years' extension expired, and later, after notice was given by the administrator to Mrs. Zimmerman that the loan was due and unpaid, the facts developed.

It is undisputed that Reed was the agent of Mrs. Kile at least for the collection of interest; but it is well settled that proof of that fact alone will not afford a sufficient basis for the inference that he was also her agent for the collection of the principal, if he did not have the note in his possession. *Richards v. Walter,* 49 Neb. 639. The only direct evidence to the effect that Reed was in possession of the note at any time after it was originally executed was the testimony of Mrs. Grace that, when she made the first two interest payments, she saw Reed clip the coupons. In his testimony Reed denied that he was entrusted with the possession of the note, and stated that Mrs. Kile gave him the coupon representing each interest instalment after payment had been made. While the record does not, in our opinion, warrant the conclusion that the note was in Reed's possession when the payments of principal were received by him, the fact that he did not have possession of the note is only a circumstance bearing upon the question of his authority to collect the principal, and is not conclusive of that question. *Thomson v. Shelton,* 49 Neb. 644. Are there any other facts or circumstances in the record from which that authority may be inferred?

The evidence reveals an unusually close and confidential business relation between Reed and Mrs. Kile with reference to the note and mortgage in suit. The loan was nego-

tiated by Reed, and he drew the papers and took the acknowledgment of the mortgage. Mrs. Kile told him at that time that she desired it to be kept a secret that she had invested this money, and arranged with Reed to pay her the money collected as interest at his office, and not to remit it to her at her home. She always received the interest money at his office, and her husband was ignorant of the fact that she had this investment until long afterwards. The note contained an option to the borrower to pay $100 or any multiple thereof on any interest paying date, and Mrs. Kile was, therefore, chargeable with notice that the maker might elect to avail herself of the option and pay part or all of the principal whenever the interest fell due. She had evinced the desire to have no personal dealings with regard to the note, from motives of concealment which applied with equal force to the collection of the principal. If she did not want payments of interest coming to her at her home which would reveal the fact that she had this money invested, neither would she want the principal paid directly to her, for the same reason. Counsel for the appellants argue that it is reasonable to infer from these facts that Mrs. Kile authorized and expected Reed to collect the principal as well as the interest.

As indicating the complete reliance which Mrs. Kile placed upon Reed throughout this transaction and the control which she permitted him to exercise over the collection of the note, attention is called by counsel to the circumstances relative to the three years' extension of the time of payment. On May 11, 1915, six days after the note fell due according to its terms, at Reed's instance and in his office, she signed the extension for that period written by him upon the back of the note. Without independent inquiry, and with nothing but the assurance of her own agent from which to reach the conclusion that Mrs. Zimmerman had not paid or did not wish to pay the note and desired an extension of it, she suffered herself to be hoodwinked into signing an extension, the effect of which was, not only to deceive herself, but to make it impossible for

the fact of the agent's defalcation to come to the knowledge of the appellants.

Mrs. Kile did not come into personal contact with the appellants with regard to the extension any. more than with regard to the preceding incidents of the transaction. Neither did she have any written evidence of their application for extension, in the form of a renewal note or coupons for the additional three years' interest, such as it is not unusual for prudent lenders to require under like circumstances. She was content to take her agent's word for it. It is contended that the fact that Reed was thus permitted to represent her in negotiating what she took to be an extension of the note is, in view of the unlimited confidence that she displayed toward him in the matter, evidence of precedent unrestricted authority on his part to deal as well with the collection of the principal as of the interest.

We are of the opinion that the facts hereinbefore narrated preclude any other theory except that Reed was duly authorized, as Mrs. Kile's agent, to receive the several payments of principal paid to him by the appellants, and we therefore recommend that the decree of the court below be reversed and the action dismissed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the action dismissed, and this opinion is adopted by and made the opinion of the court.

REVERSED AND DISMISSED.