FRANK E. DAVIS, APPELLEE, v. MARY POLAK ET AL.,
APPELLANTS: E. H. LUIKART, RECEIVER, APPELLEE.

FILED APRIL 10, 1934. No. 28695.

*Davis & Vogeltanz,* for appellants.

*E. S. Schiefelbein, J. H. Barry, J. F. Berggren, F. C. Radke, Barlow Nye* and *G. E. Price, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

This action is at law upon a negotiable bond secured by a mortgage upon 80 acres of farm land in Saunders county, Nebraska. Two other cases involving the same issues were consolidated with this one and tried together to the court, plaintiffs in those cases being respectively Flora B. Gorder and Nellie Danahay against the defendants Polak, to recover upon two negotiable bonds secured by mortgages upon 120 acres of farm land in Saunders county. Defendants in each case filed answer and cross-petition alleging payment of the bonds, and asking that E. H. Luikart, secretary of the department of trade and commerce of Nebraska and receiver of the Nebraska State Savings Bank of Wahoo, be made defendant, and that the deposit referred to be declared a trust fund payable to defendants in preference to general creditors. The receiver appeared and answered alleging that the moneys claimed to constitute a trust fund were paid to the Saunders County National Bank as the agent of said defendants, not the agent of the savings bank, and denied that they constituted a trust fund. Proper replies were filed, and upon the final hearing judgment for the plaintiff against defendants Polak was rendered in each of the cases, and that the deposits in question did not constitute a trust fund, and dismissing the cross-petitions. The defendants Mary Polak and Frank J. Polak appeal.

1. For the purpose of convenience and to avoid repetition a statement of the facts in all three cases will be here made, and they are substantially as follows:

March 17, 1926, defendants Polak borrowed of the Nebraska State Savings Bank the sum of $7,200 and gave their three negotiable bonds therefor, each for the sum of $2,400 due April 1, 1931, and to secure said bonds executed a mortgage upon 80 acres of land belonging to the defendant Frank J. Polak. On the same day they borrowed $3,000, giving two bonds therefor in the sum of $1,500 each, secured by mortgage on 120 acres of land belonging to Mary Polak; also $6,800 represented by two

bonds for $3,400 each and secured by mortgage upon the land of Mary Polak. The bonds were all payable to the Nebraska State Savings Bank and the mortgages were given to that bank as mortgagee. The bonds were payable at the Nebraska State Savings Bank and had attached coupons payable April 1 of each year representing interest at the rate of 5 per cent. per annum. These bonds were indorsed in blank by the savings bank and a portion of them came into the hands of the plaintiffs, as hereinafter stated. The coupons were also so indorsed.

In the fall of 1929, the Polaks sold their land, partly to one Frank C. Meduna and partly to one Thomas K. Simanek, with settlement to be made March 1, 1930, the total sale price being $27,700. Payment of the purchase price was made by checks of Meduna and Simanek, respectively, payable to the Saunders County National Bank, on February 27, 1930. Upon receipt of the checks the national bank charged itself on its books with the amount, by crediting the savings bank therewith, and the savings bank on its books credited the account of Frank J. Polak with the same amount. Polak was not credited by the national bank on its books. These payments were made over a year before the maturity of the bonds. Thereupon the savings bank executed and delivered releases of the mortgages to the national bank and the sale was completed by delivery of deeds from the Polaks to the purchasers. The savings bank and the national bank occupied the same banking room and were managed and controlled by the same officers, F. J. Kirchman being president and W. H. Kirchman cashier of both banks, which were generally known and spoken of as the Kirchman banks. Separate books of account were kept for each bank; but, so far as the transaction of business was concerned, there was but one bank, the different items being separated or allocated by entries upon the records only.

May 1, 1926, the plaintiff, Frank E. Davis, in the usual course of business, purchased of the Bank of Colon one of the $1,500 bonds and is now the owner and holder

thereof. On May 12, 1926, Flora B. Gorder purchased of the savings bank two of the $2,400 bonds, in due course of business, and is now the owner and holder thereof. In May, 1926, Nellie Danahay purchased of the Bank of Colon one of the $3,400 bonds, in due course of business, and is now the owner and holder thereof. Each of the bonds was indorsed by the Nebraska State Savings Bank without recourse; they were delivered to the purchasers and have remained in their possession and control ever since.

Interest was paid promptly by the Polaks, collections having been made in the following manner:

The Frank E. Davis bond. This bond was purchased from the Bank of Colon (another Kirchman bank) and as each coupon became due Davis took it to the Bank of Colon and was either paid cash or given credit in his checking account in that bank. The Bank of Colon then sent the coupon to the Saunders County National Bank and was given credit for it on the books of that bank. Davis had no transaction with either of the Wahoo banks.

The Gorder bonds. These bonds were purchased from the Nebraska State Savings Bank by one O'Donnell, brother-in-law of Flora B. Gorder, who lived in the state of Wyoming, as her agent and for her benefit. The bonds were indorsed without recourse by the bank and delivered to O'Donnell, who retained possession of them until they were delivered to Minnie, sister of Flora, at her request, and the coupons, as they became due, were taken to the bank and credited to the account of Flora Gorder on the books of the Saunders County National Bank. O'Donnell testified that Flora requested him to do business with F. J. Kirchman of the Nebraska State Savings Bank, that her father had always done business there, and that she would prefer to deal with them, rather than any other of the banks here.

The Danahay bond. This bond was purchased from the Bank of Colon where Mrs. Danahay had an account, she living in Omaha, and negotiations were carried on en-

tirely by correspondence. The bond was indorsed without recourse by the savings bank and delivered by the Colon bank to Nellie Danahay, in whose possession it has remained ever since. The coupons, as they became due, were sent to the Bank of Colon, placed to the credit of Nellie Danahay, and forwarded by the bank to the Saunders County National Bank, where they were credited to the Bank of Colon. Nellie Danahay never had any transactions with either of the Wahoo banks.

The Polaks paid the interest on these bonds to the savings bank by checks upon the national bank, or in some cases the national bank advanced the interest and charged the Polak account. The purchasers of the land insisted upon the transaction for the sale of the lands being consummated at the national bank in order that the title might be cleared of the mortgages to the savings bank, and all parties were either present or represented by attorneys when the matter was closed, the savings bank having executed and delivered proper releases of the mortgages. April 15, 1930, the savings bank and national bank closed their doors and their assets were taken over by the department of trade and commerce and later defendant Luikart was appointed receiver of the savings bank.

As appears above, however, the savings bank, at the time it executed the releases, was not the owner and holder of the bonds sold to the various plaintiffs. When it received credit for the purchase price of the lands on the books of the national bank it credited the amount to Polak on its books, but, instead of paying the outstanding bonds belonging to plaintiffs, converted the money to its own use, thus leaving plaintiffs' bonds unsatisfied. It also paid the interest coupons falling due April 1, 1930, on some of the bonds, notwithstanding they had been paid in full, though before maturity, and on several occasions after the transaction had been closed met the demand of Polak for the return of his bonds with the

excuse that they were too busy and for him to call at a later date.

Upon the state of facts as above outlined, defendants claim that the Nebraska State Savings Bank was the agent of the various plaintiffs and that defendants were justified in paying or permitting payment to be made to the savings bank. They contend that it was at least the ostensible agent because of the facts that it was the mortgagee, that the bonds were payable by their terms at the bank, that the interest coupons were collected by the bank, that the plaintiffs took no assignment of the mortgage and therefore no assignment appeared of record, and that the plaintiffs gave no notice to the defendants of their ownership of the bonds in question; and they invoke the principle of law that, where one of two innocent persons must suffer loss through the fraud or dishonesty of a third person, the one who put it in the power of the third person to commit the fraud must be held responsible for the result.

Defendants, appellants, cite a number of cases to the proposition that authority to act as agent may be conferred if the party to be charged as principal affirmatively, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency; and that such agency may be implied from facts and circumstances arising in the course of relations between the holder and the alleged agent, with regard to note, justifying the inference that it was intended that the latter was empowered to collect both principal and interest, even though the supposed agent was not in possession of the note in question. The propositions so announced may be conceded as correct statements of the law, but each case to which they are sought to be applied must stand upon its own particular facts and circumstances, and we think that they may all be distinguished from the cases under consideration by reason of a difference of fact, and they will now be briefly examined.

In *Rehmeyer v. Lysinger*, 109 Neb. 805, plaintiff brought

suit to foreclose a mortgage made to one Wentz and purchased by the plaintiff who took an assignment of the note and mortgage but did not record the assignment until more than a year after the mortgagor had paid the principal of the note to Wentz. Plaintiff kept the note and mortgage in a tin box in the vault of the Wentz company and as each interest coupon became due went to the office and upon Wentz producing the box plaintiff would unlock it, Wentz would clip the coupon and return the note to plaintiff who would lock it in the box and return it to the custody of Wentz. The amount of the coupon would be credited plaintiff's account and Wentz would collect the same and return the coupon to the mortgagor. When the note became due the mortgagor arranged with Wentz to give a new mortgage, which he did, in the name of Wentz, who immediately sold it to one Ida K. Long, and credited the amount received thereupon to the plaintiff on the books of the Wentz company. Notwithstanding the fact that the mortgage had matured, plaintiff called for and received interest on the loan for a year and a half, in ignorance of the fact that it had been paid. Upon the failure of the Wentz company, in March, 1920, about fifteen months after the mortgage matured, plaintiff made application for her papers, but the same were not in her box and were later found somewhere among the company's papers. Under these circumstances this court found that Wentz was the ostensible agent of the plaintiff for the collection of the note and affirmed the judgment for the defendant. In the opinion of the writer this is a "border line" case and the judgment of the court must have been largely influenced by the act of plaintiff in collecting the interest for a considerable period after the maturity of the note, which furnished a strong inference of confidence in and reliance upon Wentz with reference to all matters connected with the note, and also of negligence on her part in attending to her business.

The plaintiffs in the instant cases were guilty of no

negligence. All their acts were in accordance with ordinary business custom. The only negligence apparent from the record was that of defendants and their agents in failing to secure the delivery of the negotiable bonds upon payment. In *Thomson v. Shelton*, 49 Neb. 644, judgment for defendant in the lower court was affirmed upon the ground that it would not be disturbed where reasonable minds might draw different inferences from the testimony. In *Home Savings Bank v. Stewart*, 78 Neb. 624, payment was made to the original payee who was in possession of the note, furnishing a presumption of ownership which was not rebutted by the fact that the note was indorsed in blank. In *Harrison Nat. Bank v. Austin*, 65 Neb. 632, the note was paid before maturity to one Burr, who was the agent of the bank in securing loans, and the evidence showed a series of transactions between the plaintiff and Burr where the latter collected the principal and interest of the loans, and the court held that such fact warranted the finding that Burr was the agent of the bank. In *Stuart & Co. v. Stonebraker*, 63 Neb. 554, the original payee of a note undertook its collection with the knowledge of the plaintiff and was therefore held his agent. In *Phoenix Ins. Co. v. Walter*, 51 Neb. 182, there were extended dealings between the Nebraska & Kansas Farm Loan Company and the plaintiff in which the company procured loans for the plaintiff and collected interest and principal thereof, and it was held that the plaintiff was estopped to deny the agency of the company to receive payment from the borrower. In *Holt v. Schneider*, 57 Neb. 523, one Burr secured loans for the plaintiff and collected the interest and principal and remitted to plaintiff at irregular times, and acted in various other matters in connection with the loans as agent for the plaintiff, and it was held that Burr was an ostensible agent. In *Pine v. Mangus*, 76 Neb. 83, where the supposed agent, in the usual course of business, collected the interest and principal of loans for the plaintiff, he was held an ostensible agent. In *Bliss v. Falke*, 125 Neb. 400, there was

direct evidence by the cashiers of the banks who held and owned the notes and mortgages in question that they expected the party charged as agent to collect the notes.

It will be noted, so far as the plaintiffs Davis and Danahay are concerned, that they had no dealings with the Nebraska State Savings Bank or the Saunders County National Bank; they sent their coupons for collection to the Bank of Colon, which paid them or credited same to account of the owners. If the purchase money in question had been paid to the Bank of Colon, the questions discussed in the above cases might have some application and there would be some room for the contention that the Bank of Colon was the agent of those plaintiffs; but, as the Bank of Colon did not receive any of the money paid by the purchasers and those plaintiffs knew no other bank in connection with the transaction, it is perfectly clear that the two Wahoo banks were the agents for collection of the Bank of Colon but not of the plaintiffs.

The situation as to the bond held by Gorder is somewhat different. That bond was purchased from the Nebraska State Savings Bank by her agent, O'Donnell. The notes and mortgage were kept in the possession of O'Donnell or the sister of · plaintiff, and upon presentation of the coupons they were paid by crediting the checking account of Gorder in the books of the Saunders County National Bank, which returned them to defendants. These are substantially all the facts upon which defendants rely to establish an ostensible agency in the Nebraska State Savings Bank. We think they are clearly insufficient for that purpose. In *Kile v. Zimmerman,* 105 Neb. 576, it was said: "It is undisputed that Reed was the agent of Mrs. Kile at least for the collection of interest; but it is well settled that proof of that fact alone will not afford a sufficient basis for the inference that he was also her agent for the collection of the principal, if he did not have the note in his possession." But if the evidence is of such a character that reasonable minds might draw different inferences therefrom, under the long established

rulings of this court the judgment of the trial court will not be disturbed. The action is at law upon the bonds and the finding of fact by the trial court is to be given the same effect as a verdict of a jury. The equitable claim set up by defendants constituted no defense to the petition, and therefore did not convert the action into one in equity. As against an inference of ostensible agency in the savings bank, attention is called to the fact that it did not have, and since the purchase of the bonds by plaintiffs it has not had, possession of the bonds. Furthermore, the defendants made the national bank their agent for the purpose of seeing that the bonds and mortgage were paid and taken up, and the savings bank was the agent, rather of the national bank than of the plaintiffs.

The bonds in question were negotiable instruments, and it has been held that "payment of money on a note at a bank where it is made payable, when the note has not been left there and is not produced, is not a payment of the note. In such case the person receiving the money becomes the agent of the payor, not of the payee." *First Nat. Bank v. Chilson*, 45 Neb. 257. Where payment is made upon a note, before due, to an agent of the payee who has neither the possession of the note nor authority to collect it, it is made at the risk of the debtor. *Walsh v. Peterson*, 59 Neb. 645. Authority to collect interest coupons is insufficient upon which to ground an inference that such person has authority to collect the principal sum, where the evidences are not and have not been in his possession. *Lay v. Honey*, 2 Neb. (Unof.) 749. Nor does such authority carry with it implied agency to collect the principal of the debt before due. *Walsh v. Peterson, supra.* Section 62-605, Comp. St. 1929, of the negotiable instruments act provides: "The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

Considerable stress is put upon the failure of plaintiffs

to obtain assignments of the mortgage and have the same recorded; but such record would not be constructive notice to the defendants, but only to creditors, subsequent purchasers or mortgagees dealing with the property. Stress is also put upon the fact that plaintiffs did not notify defendants that they were owners of the bonds; but no duty rested upon them to do this; the duty is upon the debtor upon a negotiable instrument to seek out the creditor, and if he pays the wrong party he must suffer the loss. When the Gorder bonds were negotiated they were accompanied by an agreement signed by the Kirchmans to repurchase on six months' notice; and the Davis and Danahay bonds by a certificate signed by the Saunders County National Bank that the mortgage securing said bonds was held by said bank in trust for the benefit of the holders, and it is therefrom argued that payment to the trustee terminated the liability of the debtor, citing *Brown v. Hall*, 32 S. Dak. 225, which is an authority for plaintiffs in these cases, though on quite a different state of facts; also, *Newman v. Fidelity Savings & Loan Ass'n*, 14 Ariz. 354, holding that a mortgagee to whom the mortgagor has conveyed the legal title must be presumed to act with authority in entering a release of the mortgage upon the record. That was an action between the assignee of the note and a subsequent mortgagee and would have some application here if this action were against the purchasers Meduna and Simanek, but here there is no question of innocent purchasers involved. Holding the mortgage in trust for the bondholders imports no authority to receive payment, but merely to preserve the security.

We are clearly of the opinion that payment to the Saunders County National Bank or the Nebraska State Savings Bank did not constitute payment of the bonds of the plaintiffs, and that the finding of the trial court that the savings bank was not the ostensible agent of plaintiffs is sustained by sufficient evidence, and it will not be disturbed.

2. The cross-petitions in the three cases present a claim against the receiver of the Nebraska State Savings Bank that the purchase money for which the bank gave Polak credit, to wit, $27,700, was a deposit made for a specific purpose of taking up the bonds and mortgages of Polak to that bank, and constituted a trust fund for the repayment of which defendants are entitled to a preferential claim upon the assets of the bank. Denuded of all technicalities the situation is simply this: The savings bank received the money, credited it to the account of Polak, and executed and delivered releases of the mortgages to the national bank to be delivered to Polak, and thereupon Polak delivered his deeds to the purchasers. True, the checks of the purchasers were made to the Saunders County National Bank and were indorsed by that bank, but no credit was given Polak upon the books of that bank, and apparently the checks so indorsed were delivered to the savings bank, which thereupon placed the amount to the credit of Polak. The checks were upon other banks and collected through the First National Bank of Wahoo. How it can be contended under this state of facts that the national bank received the money and that; if it constituted a trust fund, their claim should be made against the national bank is beyond our comprehension, yet this seems to be the contention of the receiver. It may be possible that the defendants are entitled to protection of the fund as against both banks, but this question is not before us and we do not decide it. We are, however, clearly of the opinion that the evidence establishes all the conditions required to constitute a trust fund in the hands of the savings bank. The money was deposited in the savings bank to the credit of Polak; it was received for the specific purpose of taking up Polak's bonds and mortgages; it certainly augmented the assets of the savings bank while it remained therein; it was intermingled with the general funds of the bank and converted by the bank to its own use for other purposes than that for which it was deposited. A clearer case of

trust and abuse thereof has not come to our attention. If I make a deposit in a bank to be used for a specific purpose and it is not used for that purpose a trust results in my favor for the return of the money. *State v. Bank of Otoe*, 125 Neb. 414; *In re Warren's Bank*, 209 Wis. 121.

It is argued by the receiver that this is not a trust fund because the savings bank never had the money and its assets were not thereby augmented, and that the account in the savings bank was an account of the national bank. These propositions are in the face of undisputed evidence to the contrary. The savings bank credited the money to Polak. It was not drawn out by the national bank, but upon receipts purporting to be signed by Polak but without his knowledge. True, the money was paid to the national bank, but this was the very conversion of which Polak complains. The credit to Polak on the books of the savings bank was the same, in banking custom, as the deposit of the actual money, and was so treated by the bank. It is also argued that the money was all gone before the bank closed. This, however, does not defeat the claim of a trust, because a claimant is entitled to charge the general mass of the bank's assets coming into the hands of the receiver, which amounted to at least $150,000. *State v. Farmers State Bank*, 121 Neb. 532.

In *State v. State Bank*, 122 Neb. 582, we held: "Converted proceeds of a check delivered to and received by a bank for the sole purpose of paying a specific debt of the payee *held* trust funds payable in full from bank assets in the hands of the receiver." To the same effect see *State v. Farmers State Bank*, 121 Neb. 547. We think the principles announced in those cases are controlling in this and that the defendants are entitled to have their claim against the Nebraska State Savings Bank allowed a preference over the claims of general creditors to the extent of the amount due Frank E. Davis for the princi-

pal of his bond and any unpaid interest thereon up to the date of such allowance.

It is probable that, upon the same principles herein announced, the plaintiff Davis is also entitled, as beneficiary of the trust, to a preferential claim against the savings bank, but this leads to no confusion or danger of double payment, as the matter will be subject to adjustment by the receiver upon the final settlement of the insolvent estate.

It follows that the judgment of the district court in favor of the plaintiff and against the defendants for the amount of the bond sued upon is right and is affirmed. That part of the decree denying defendants a preferential claim is reversed, with instructions to the district court to enter a decree allowing such claim in accordance with this opinion.

AFFIRMED IN PART, AND REVERSED IN PART.

PAINE, J., dissenting.

I dissent from the foregoing opinion. I desire to set out some of the facts upon which I base this dissent.

The pleadings and the evidence disclose that Frank J. Polak was a customer of the Saunders County National Bank at Wahoo, Nebraska, and carried a checking account in said bank. The Nebraska State Savings Bank was also operated in the same room, and F. J. Kirchman was president of each bank, and the directors were the same with one exception. The two banks were considered as one bank by the general public, being often referred to as the Kirchman bank. On April 15, 1930, both banks became insolvent, and were closed by the respective authorities, the Saunders County National Bank being taken over by the comptroller of currency and the Nebraska State Savings Bank being taken over by the department of trade and commerce.

As stated in the main opinion, Mr. Polak contracted to sell the land upon which these three mortgages were outstanding, in the fall of 1929, to Frank C. Meduna and

Thomas K. Simanek. The settlement was to be made March 1, 1930, at which time these said purchasers, to protect themselves against the mortgages, shown in the abstracts to be held by the Nebraska State Savings Bank, insisted upon making settlement at the bank.

The check from Frank C. Meduna is exhibit 18, dated February 26, 1930, payable to the Saunders County National Bank, in the sum of $9,500, and has written in the corner thereof, "For account F. J. Polak on condition Mtges. released as shown by abstract." The several checks from Simanek were drawn on several different banks, and made a total of $18,200.

While the checks were made payable for a total of $27,-700 to the Saunders County National Bank, they were credited at once on the books of that bank to the account of the Nebraska State Savings Bank, mortgagee, in that bank, and at the same time were entered in the books of the Nebraska State Savings Bank to an account designated "Polak, Frank J. 1930," of which account defendant Polak had no knowledge, and withdrawals made from this account by Kirchman were without his knowledge.

In a settlement sheet, exhibit 22, dated March 1, 1930, F. J. Kirchman, as president of the Saunders County National Bank, certifies that the amount due on the $17,-000 Polak loans that day was $20,403.55, and that all of the loans have been fully paid, leaving a net deposit to the credit of Mr. Polak of $7,296.45. Thereupon, warranty deeds were delivered by Mr. Polak and wife, and a release, being exhibit 10, was made by the Nebraska State Savings Bank, by F. J. Kirchman, president, and W. H. Kirchman, cashier, under date of February 26, 1930, releasing the mortgages made by the Polaks to that bank, in the total sum of $17,000. After receiving the statement of the president of the bank, Mr. Polak testifies that he demanded the return of the notes, but the officers of the bank put him off, saying they were too busy to look them up, and that he went in every few days, but was put off each time. On April 15, 1930, when

the Nebraska State Savings Bank was taken over by the department of trade and commerce, the balance due it from the Saunders County National Bank on that day was $82.85. The record further shows that exhibit 25 was a receipt, dated March 8, 1930, signed by Frank J. Polak, showing receipt from the Nebraska State Savings Bank of the balance on the land sale of $7,296.45, and a deposit slip of the Saunders County National Bank of the same date, showing the amount placed in his checking account in that bank.

The foregoing facts set out transactions which were still usual in 1930, of finding a cash buyer for an encumbered farm, paying off the mortgage from the purchase price and having a surplus left for the owner of the farm. The parties involved in this transaction had implicit confidence in F. J. Kirchman, and the fraudulent and dishonest manner in which the transaction was handled did not come to light until after the Kirchman banks had closed. It then developed that some of these coupon bonds had been sold long before, and were not taken up with the purchase money paid to Kirchman for that purpose.

About May 1, 1926, Frank E. Davis, plaintiff herein, had purchased one of the $1,500 bonds, Flora B. Gorder had purchased two of the $2,400 bonds on May 12, 1926, and Nellie Danahay was the owner of one of the $3,400 bonds. Each of these purchasers knew the mortgage securing the bonds was upon the Polak land, but had never notified the Polaks they had purchased the bonds or recorded any assignment of the mortgage, and knowledge of the fact was never brought to the Polaks in any way.

While F. J. Kirchman had given a certificate on March 1, 1930, that all of these loans had been paid off, and had released the mortgages securing them, yet he never called in these bonds for payment, and the three parties named above brought action upon the bonds against the Polaks.

The case of *Rehmeyer v. Lysinger,* 109 Neb. 805, holding directly contrary to the main opinion, is reviewed, and dismissed with the statement that it is a "border line" case. It cannot be disposed of so easily, in my opinion, for the facts were not as strong as this case, and yet the finding of this court was directly contrary to the holding in the main opinion. Let us consider it. The plaintiff sought to avoid the consequences of the fraudulent acts of a faithless agent, as in the case at bar. Petition was for foreclosure of real estate mortgage. Defendant's answer gives a brief history of the transaction; alleges defendant's entire lack of knowledge or notice, actual or constructive, that plaintiff was assignee of the mortgage; alleges defendant's payment in full of said note and mortgage, and the estoppel of plaintiff against defendant to the relief she seeks.

It appears that Mrs. Rehmeyer, who was 80 years of age, purchased the note, but did not record her assignment until 15 months after the mortgagor had paid it off to Wentz. It was held that Charles W. Wentz was the agent of the plaintiff in collecting the mortgage, and her lack of ordinary diligence and her agent's perfidy are alone responsible, the court saying: "Where one of two innocent persons must suffer through the misfeasance of the agent of one, that one must suffer who has placed the agent in a position to perpetrate the fraud complained of."

The Polaks were entirely innocent of the felonious acts of the president of the mortgagee bank concerning their notes, but O'Donnell, who handled the Gorder bonds, knew all the facts, placed his agent, Kirchman, in a position to defraud the Polaks.

Let us examine another "border line" case established by this court. In *Taylor v. Flodman,* 109 Neb. 812, a companion case to the *Rehmeyer* case, the purchaser did not file her assignment of the mortgage until over two months after Wentz failed. So far as the evidence shows, not a soul knew of the transaction except the plaintiff and Wentz, and no one could know anything about it

except as one or the other of these two individuals imparted the information. The plaintiff uttered not a word concerning it, nor did Wentz. Exactly the same as O'Donnell did in the case at bar. Did this court consider only the position of the plaintiff? No. The statement is made: "She kept her assignment from the public records, and thereby its very existence from the knowledge of defendant and the world. In the meantime that she made Wentz her agent to collect her interest and look after the mortgage matter for her stands admitted in the record. Under these circumstances, in the name of common sense and reason, why should plaintiff expect the mortgagor or any subsequent grantee to deal with any one but Wentz in the payment of the mortgage debt. * * * True, it is a hardship that the plaintiff should suffer this loss. It is also true that it would be a hardship that defendant should suffer a like loss." These words of the late Judge Troup, with the substitution of Kirchman in the place of Wentz, make the case on "all fours" with the case at bar. Should we not give weight to a "border line" case when it is clearly on this side of the border?

There is still another decision of this court that in some respects is more closely in point than these two "border line" cases. It is *Bliss v. Falke*, 125 Neb. 400. Falke gave a mortgage on a half section of land to the identical Nebraska State Savings Bank to which the Polaks gave their mortgages. The same F. J. Kirchman sold an undivided half of this loan to each of two of his country banks. Now, let us take the words of the decision: "About the time they became due, January 1, 1930, they notified Kirchman, who had been the go-between of the parties in the said renewal and also in the collection of interest and in the preparation of papers and who was also a stockholder of both of the banks, that they desired payment. Kirchman notified Falke and suggested that he get the money from the defendant Otto, giving him a mortgage on the land to secure the same, and pay off the

banks. He did so and placed the money in Kirchman's hands for that purpose. The record shows, I think, that he borrowed the whole or major portion of it from the Nebraska State Savings Bank of Wahoo. This he did, believing that Kirchman was duly authorized to collect and receive. Kirchman did not account to the bank but reloaned and used the money for other purposes."

Upon the failure of the mortgagee banks, the receiver took the position that plaintiffs do in the case at bar, and insisted that Kirchman was not an authorized agent for the collection of these mortgages, and started foreclosures. Judge Shepherd states in this opinion that the fact that Kirchman did not have the mortgages in his possession when he collected the money is not sufficient to prove that he was unauthorized to receive it, and to bind the bank by so doing. The trial court found that Kirchman was the agent for collection, and entered decree adjudging that the mortgages had been fully paid, canceled said mortgages, and dismissed the case, and the judgment is affirmed by Judge Shepherd. He says:

"Certainly, if Kirchman had not been made an agent to collect and was unauthorized to receive the money, the receiver was not bound by what he did and may foreclose and sell the land to discharge the two mortgage debts. On the other hand, the fact that Kirchman did not have the mortgages in his possession when he collected the money is not sufficient to prove that he was unauthorized to receive it and to bind the bank by so doing. Lack of possession, to be sure, is a circumstance to be considered and Falke took some risk in paying without requiring a release or an authorization in writing showing Kirchman's agency. *Thomson v. Shelton,* 49 Neb. 644. * * *

"The fact that the banks never received their money, the fact that Kirchman never accounted for the money paid, the fact that the rights of innocent depositors are involved, is not material if Kirchman was authorized to collect and receive. Kirchman may have been guilty of breach of trust, but that cannot be chargeable to Falke

or to Otto if they were not parties to it; and there is no evidence of the latter."

As the syllabus states the law in Nebraska, let us consider the two paragraphs therein which, up to the time of the release of the main opinion in this case, has been the law in our state, as announced by Judge Shepherd in *Bliss v. Falke, supra:*

"Ostensible authority to act as agent may be conferred if alleged principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon apparent agency.

"That party collecting mortgage was not in possession thereof could be considered, but was not conclusive on question of authority to act as mortgagee's agent." (250 N. W. 250.)

The first syllabus paragraph is taken from the case of *Thomson v. Shelton,* 49 Neb. 644, and is cited with approval in *Pine v. Mangus,* 76 Neb. 83, in which case the syllabus stated the law of Nebraska in 1906, and in my opinion, with a slight change, could well be used for the syllabus in the case at bar. It reads:

"A mortgagee of real estate assigned its mortgage, and guaranteed the payment thereof, and thereafter collected the principal and interest, but failed to account therefor to its assignee, who instituted this action to foreclose the mortgage. Evidence examined and *held* sufficient to show that the mortgagee was the agent of its assignee, and the payments to it satisfied the mortgage indebtedness."

Other cases are *Stuart & Co. v. Stonebraker,* 63 Neb. 554, and *Newman v. Fidelity Savings & Loan Ass'n,* 14 Ariz. 354, which hold that a mortgagee is presumed to be the legal owner and holder of a mortgage and the evidence of the debt secured thereby, and in the absence of actual or constructive notice to the contrary, the mortgagee holding a recorded deed from the mortgagor must be presumed to act with authority in entering a release of such mortgage upon the record. Many other citations will be found in the excellent article in 7 Neb. Law Bul-

letin, 307, where we also find: "The apparent authority of an agent which will bind his principal is such authority as the agent appears to have by reason of the actual authority which he has."

In "Restatement of the Law of Agency," by the American Law Institute, just published, section 82 reads: "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

It is certain that not one of the plaintiffs ever failed to affirm the agency of Kirchman in collecting their interest from Polaks during all those years and delivering the coupons to Polaks for them.

Were the plaintiffs not negligent in permitting the Kirchman bank at all times to show apparent agency in handling all business relating to these loans? Not a single act can be cited on the part of plaintiffs to show their ownership. On the other hand, the evidence shows that the Polaks were absolutely unaware of any change in the ownership of their notes and mortgages, and had no reason to suspect a change. They paid the bonds in full to the same mortgagee from whom they had borrowed the money, and paid all interest, and he gave them releases thereof.

"Whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." Broom's Legal Maxims (9th ed.) 463.

In my opinion, the holdings in the case at bar disturb a long line of decisions of our court, and force the defendants, who have done no wrong, to pay large sums of money a second time for the benefit of plaintiffs, who have, by their want of ordinary care, conferred ostensible and apparent authority upon Kirchman to act as their agent in the collection in full of the principal and interest of the notes they are now suing for.